Argued September 30, reversed and decree entered November 18, 1924.

## CLOSSET ET AL. v. BURTCHAELL ET AL.
## CLOSSET WILL CASE.

(230 Pac. 554.)

**Trusts—Will not be Continued Merely for Trustee's Benefit, if All Beneficiaries Desire Termination.**

1. Where purposes of trust have been accomplished and all beneficiaries are *sui juris,* court, on application of all of them or of one possessing entire beneficial interest, will declare termination of trust, which will not be continued merely for trustee's benefit.

**Perpetuities—Provision Postponing Transfer of Property to One Absolutely Entitled Thereto Void.**

2. Any provision postponing transfer or payment of property to one absolutely entitled thereto, through trustees or otherwise, is void, as against public policy.

---

2. The rule against perpetuities, see note in 49 Am. St. Rep. )17

**Trusts—Part of Cestuis cannot Terminate Trust.**

3.  Part of *cestuis* cannot terminate trust.

**Trusts—Cannot be Terminated by Consent While Identity of Legatees or Devisees on Final Distribution Remains Uncertain.**

4.  Trust cannot be terminated by consent of beneficiaries, while it remains uncertain who will take under bequest or devise relating to final distribution of trust property.

**Trusts—Should not be Terminated Where Purposes have not been Accomplished and are Inconsistent With Cestuis' Full Beneficial Ownership and Control.**

5.  Valid trust, purposes of which have not been accomplished and are inconsistent with *cestuis'* full beneficial ownership and control of property, should not be terminated by court, either on application of all beneficiaries or of one possessing entire beneficial interest.

**Trusts—Testamentary Trust Held not Terminable Until Expiration of Trust Period.**

6.  Trust created by will requiring trustees to exercise their personal judgment throughout trust period, in managing, caring for, repairing, maintaining and improving property, mortgaging and selling parts to replenish fund for such purposes, etc., *held* active trust, not terminable until expiration of trust period, as only named trustees could perform such duties.

**Trusts—Testamentary Trust Held not Terminable Before Time Provided by Agreement Among Beneficiaries.**

7.  Trust created by will, requiring trustees to distribute trust property after twenty-five years, among testator's widow, daughter and sons, if then in being, and making provision for distribution of share of widow or child in case of death, *held* not terminable before time provided, by agreement of widow, sons and representatives of deceased child; it being impossible to determine who will take at time of final distribution.

**Wills—Testator's Intent Prevails Unless Contrary to Law or Against Public Policy.**

8.  Primary rule, to which all others must bend, is that testator's intent, as expressed in will, must prevail, unless it offends against public policy or positive rule of law.

**Perpetuities—Will Construed as if Rule Against Perpetuities Did not Exist.**

9.  Every provision in will or settlement should be construed without regard to rule against perpetuities which should then be remorselessly applied to provision so construed, such rule not being one of construction to determine intent, but peremptory command of law defeating intent.

---

3.  Termination of trust by agreement of all parties interested, see note in Ann. Cas. 1915B, 723.

**Wills—Construction Producing Legal Result Adopted Where Fairly Capable of Two Constructions.**

10. Will containing doubtful or ambiguous expressions, fairly capable of two constructions, only one of which would produce legal result, should be so construed, law favoring preservation, rather than defeat of contingent gift, and presuming that testator meant to create legal estate.

**Wills—Supposition That Provision was not Intended to be Construed in Way Rendering It Too Remote may Govern When Expression is Ambiguous.**

11. Supposition that provision, too remote if construed in certain way, was not intended to be so construed, may be held to govern, when expression is ambiguous, though it cannot avail against clear form of words.

**Wills—Will Held to Indicate Intent to Postpone Vesting of Estate for Fixed Period.**

12. Will *held* to clearly indicate testator's intent to tie up property, and postpone vesting of any estate or interest therein for twenty-five years from his death, by preventing alienation thereof, and creating contingent future estates or interests not arising until expiration of such period, and not doubtful, ambiguous, or fairly capable of two constructions.

**Trusts—Equity will not Enforce Trust Created for Illegal or Fraudulent Purpose or Conflicting With Rule Against Perpetuities.**

13. Equity will not enforce trust created for illegal or fraudulent purpose or conflicting with rule against perpetuities.

**Perpetuities — Devise to Trustees Held Void as Violating Rule Against Perpetuities.**

14. Devise to trustees for twenty-five years *held* void, as violating rule against perpetuities, in that power to alienate was conferred on trustees alone and devisees could have no interest or estate in trust property, which could be subject of sale or transfer by them before time of final distribution.

**Perpetuities—Absolute Term, Without Reference to Lives in Being cannot Exceed Twenty-one Years.**

15. Absolute term, for which property is devised to trustees by testator, without availing himself of life or lives in being at time of his death, cannot exceed twenty-one years.

**Perpetuities—Vested Interest not Subject to Rule.**

16. Vested legal or equitable interest in realty or personalty is not subject to rule against perpetuities.

**Wills—Whole Gift to One, Whose Share will be Increased by Payments on Death of Other Members Beyond Limits of Rule, is Void.**

17. Though time of payment to member of class, is not too remote, if his share will be increased by other payments beyond limits of rule against perpetuities on death of other members of class, whole gift is void.

Perpetuities — Beneficial Interest Under Trust must Vest Within Time Limited for Vesting of Legal Estates.

18. Continuance of trust is not limited to any period of time, essential thing being that beneficial interest thereunder vest in *cestui* within time limited by law for vesting of legal estates.

Perpetuities—Estate must Vest in Possession.

19. It is essential to vesting of estate or interest in property that it vest in possession or interest.

Perpetuities—Testamentary Trust Construed as Vesting No Present or Future Estate or Interest in Beneficiaries.

20. Under devise to trustees for absolute term of twenty-five years, beneficiaries *held* to have no accrued, fixed, and indefeasible right to present or future enjoyment of property, and hence no estate or interest therein vested in them.

Perpetuities—Trust Invalid Unless Beneficial Interest Vests in Individuals Definitely Ascertainable Within Legal Limit.

21. For private, as distinguished from charitable, trust to be valid, beneficial interest must vest absolutely in individuals definitely ascertainable within limits allowed by law for vesting of estates.

Perpetuities—That Beneficiaries may Survive Trust Period and Take Title, Unimportant on Question of Remoteness.

22. That all beneficiaries named in will may survive trust period and legal and equitable title then vest in them, according to testator's expressed intent, is unimportant on question of remoteness, which must be determined by reference to possible, not actual, events.

Perpetuities—Estate Arising Within Prescribed Period may be so Limited as to be Determined on Happening of any Event, However Remote.

23. Estate arising within prescribed period may be so limited as to be determinable on happening of any event, however remote; rule being directed against remoteness in commencement or first taking, rather than determination, of estate.

Perpetuities—Rule Permitting Determination of Estate on Happening of any Event, However Remote, Held Inapplicable.

24. Rule permitting limitation of estate, so as to be determinable on happening of any event, however remote, is inapplicable, where beneficiaries' interest in trust *res* is not vested, but contingent on their survival of trust period of more than twenty-one years from testator's death.

Perpetuities—Gift not Vesting Within Twenty-one Years from Testator's Death Void, Whether Remainder or Executory Devise.

25. Gift over, which will not vest in ascertainable persons within twenty-one years from testator's death is void, whether remainder or executory devise, as common-law rule against perpetuities obtains in Oregon.

**Perpetuities—Provisions Under Which Future Interests may Vest in Descendants, not in Being at Testator's Death, After More Than Twenty-one years, Plus Period of Gestation, Void.**

26.  Trust provisions of will, under which contingent future interests may not vest until more than twenty-one years, plus period of gestation, after testator's death, in descendants not born or in being at time of his death, are void.

**Perpetuities—Testamentary Trust Held Void as Imposing Unlawful Restraint on Alienation.**

27.  Trust provisions in will *held* void as imposing unlawful restraint on alienation of property, in not allowing equitable interest therein to vest or property to become distributable until beyond limit fixed by rule against perpetuities.

**Wills—Intent to Create Unlawful Restraint Against Alienation must Clearly Appear.**

28.  Testator's intent to create unlawful restraint against alienation must clearly appear.

**Wills—Legal and Illegal Trusts, so Connected as to Constitute Entire Scheme, Construed Together and Held Illegal.**

29.  When legal and illegal trusts in will are so connected as to constitute entire scheme, so that testator's wishes would be defeated if one were retained and others rejected, or manifest injustice would result from such construction to beneficiaries or some of them, all must be construed together and *held* illegal.

**Wills—Legal Provisions Held Defeated by Illegal Trust Provisions.**

30.  Legal provisions of will for setting aside half of rents, issues and profits of trust property, to create fund for improvement and repair of property, and for distribution of remainder to testator's widow and children, *held* inseverable from, and hence defeated by, illegal provisions postponing vesting of absolute ownership.

**Wills—Attempted Disposition of Property not Sanctioned by Law Void.**

31.  Right to dispose of property by will to take effect after death is conferred by law, and any such disposition not sanctioned by law is void.

From Multnomah: GEORGE TAZWELL, Judge.

In Banc.

REVERSED.

For all appellants save Oscar J. Closset, there was a brief over the names of *Mr. Isham N. Smith* and *Mr. John F. Logan,* with an oral argument by *Mr. Smith.*

For appellant Oscar J. Closset, there was a brief and oral argument by *Mr. Albert L. Gordon.*

For respondents there was a brief over the names of *Messrs. Chamberlain, Thomas & Kraemer* and *Mr. R. K. Powell,* with an oral argument by *Mr. Otto J. Kraemer.*

RAND, J.—Joseph Closset died testate at Portland, Oregon, on February 9, 1915, leaving an estate consisting of both real and personal property. The real property consists of numerous tracts of land in the City of Portland. He left surviving him his widow, Emelie L., two sons, Alfred Adolph and Oscar Joseph, and one daughter, Eugénie Schmidt, who has since died, leaving surviving her, her husband, George W. Schmidt, a son, George E. Schmidt, and a daughter, Christel Schmidt. Since her mother's death Christel Schmidt has also died, being at the time unmarried and a minor. The will is dated September 1, 1908, and his codicil January 4, 1911, and contains the following provisions:

"First: I will direct that all my just debts and obligations of every character, including my funeral expenses, and the expenses of my last sickness, shall be paid by my executrix and executor hereinafter named, as soon as practicable after my decease.

"Second: I give and bequeath to my wife, Emelie L. Closset, all of the furniture, fixtures and household effects now contained in my home, or of which I may die possessed.

"Third: I give, bequeath and devise to my trustees hereinafter named all of the rest, residue and remainder of my property and estate, of which I may die seized or possessed, whatever be its character, whether real, personal or mixed, or wheresoever situated, in trust for the following uses and purposes, that is to say:

"I.  To take, hold, manage and care for said property for a period of twenty-five years from the time of my decease; to collect all rents, interest, dividends, issues and profits, and to repair, maintain and improve said property, so as to produce a suitable income for the purposes hereinafter specified; to set aside one-half of the net income, issues and profits of all the real property, for the purpose of creating a fund to maintain and keep the same, together with the improvements thereon, in repair, and to improve the same.  And I hereby direct my said trustees to invest said fund in safe and convertible securities, if not immediately necessary for the purpose of improvement, so that the same may be available at any time that they may desire to use same for said purposes.  And I direct my said trustees, whenever in their judgment and discretion it shall seem necessary or practicable, to mortgage any portion of my property for the purpose of improving any piece or pieces of property; and also, in their discretion, to sell any unimproved property for the purpose of improving other portions of my property, in the event that the fund herein created for said purposes and the funds they may raise by mortgages, shall not be sufficient under the conditions to suitably improve and keep said property in repair.  But under no other circumstances shall any piece or parcel of land of which I may die seized or possessed be sold by said trustees during the term of the trust hereby created.

"II.  To pay to my wife, Emelie L. Closet, and daughter, Eugenie Schmidt and my sons, Alfred Adolph Closset and Oscar Joseph Closset, each month, equally, share and share alike, the net rents, and income derived from my said property, and proceeds of interest and dividends, after due allowance for the payment of the expenses of the administration of my estate and this trust, and the expenses and charges on my property, due and to become due, and the fund hereinabove created for improvement.  And I charge my trustees to so handle and improve the said property that the same shall produce a sufficient income to comfortably support and maintain

my said wife, daughter and sons out of the portion thereof herein provided to be paid to them monthly.

"III.   I hereby direct my said trustees, after providing for the payments and matters hereinabove set out, and paying and discharging the expenses of this trust, at the end of the term of twenty-five years from the date of my decease, or as soon thereafter as said trustees can conveniently do so, to divide and distribute the whole of my said estate, including the proceeds, issues and accumulations remaining in their hands, equally, share and share alike, between my wife, Emelie L. Closset, my daughter, Eugenie Schmidt, and my sons Alfred Adolph Closset and Oscar Joseph Closset.

"IV.   In the event of the death of my wife, Emelie L. Closset, before the distribution of my estate is hereinabove provided for, I direct my trustees to pay her share of the monthly income, and her distributive share of my estate to which she would be entitled under this will, equally, share and share alike, to my said daughter and sons, or in the event of the death of any of said children before the death of my wife, then to her or his children, *per stirpes* and not *per capita;* or in the event that any of my said children should die without leaving issue surviving them, then to my surviving children, or their children, *per stirpes* and not *per capita.* And in the event of the death of any of my children before the distribution of my estate, as hereinabove provided for, I hereby direct my trustees to pay the share of the monthly income and their distributive shares of my estate to which they would be entitled under this will, equally, share and share alike, to their children, *per stirpes* and not *per capita,* or if any of my said children should die without leaving issue surviving them, then to my children surviving them, or in the event of their death to their children, *per stirpes* and not *per capita.*

"Fourth: I hereby declare the devise to my wife hereunder, and provisions made for her, to be in lieu of dower, and she shall make her election within one

year after my death whether she will take the lands so devised and provisions so made for her, or whether she will be endowed of the lands.   In making these provisions for my wife, I consider that her interests in my estate, as hereinabove provided, will be greater than she would be entitled to by her dower, as her interests will be greatly increased and better protected by holding the estate intact, and improving the same as herein provided for.''

The codicil, so far as material, reads as follows:

''First: In addition to the bequests and devises to my wife, Emelie L. Closset, in said last will contained, I devise my house where we now reside, at the southeast corner of Twenty-fifth and Lovejoy Streets, Portland, Oregon, together with all of the effects of said household, to my wife, Emelie L. Closset, during the whole term of the trust in said will created, and in the event of her death before the termination of said trust, to my trustee, and I direct that my wife shall, at her own expense, keep said house and premises and effects in good repair and condition, and insured against fire to the reasonable value thereof.

''Second: I hereby revoke the Fifth clause of my said will, nominating and appointing my wife, Emelie L. Closset, and my son Alfred Adolph Closset to be executrix and executor, respectively, of my said last will and testament, and trustees thereunder, and hereby nominate and appoint my wife, Emelie L. Closset and my friend James T. Burtchaell to be executrix and executor, respectively, of my said last will and testament, and the trustees thereunder, and I direct and request that no bond or undertaking, or security of any kind be required of either of them as such executrix and executor, or trustees.   In other respects, the Fifth and last, clause of my said last will and testament to remain unchanged and in full force and effect, and I do hereby ratify and confirm my said will in every other respect.''

112 Or.—38

The will and codicil were duly admitted to probate and the defendants, Emelie L. Closset and James T. Burtchaell, were, pursuant to the directions thereof, duly appointed as executrix and executor of the last will and testament of the decedent. Within the time allowed by law Emelie L. Closset elected to take, not under the provisions of the will, but the dower right allowed by statute in the real property of her deceased husband. The estate has been fully administered upon and the property of the estate is now ready for distribution, either to the defendants as trustees or to the heirs at law of decedent, whichever may be found to be entitled thereto.

This suit was brought by the two sons of decedent and by George W. Schmidt, the husband of the deceased daughter, Eugenie Schmidt, who sued both in his individual right as surviving husband of the deceased daughter, and as administrator of her estate, and by Frank R. Graff, as guardian of the estates of George E. Schmidt and Christel Schmidt, the minor children of Eugenie Schmidt, deceased, against the defendants, James T. Burtchaell and Emelie L. Closset, both in their representative capacity and as trustees, for the purpose of having the trust attempted to be created by the will declared to be invalid and to have the property of the estate descend to the heirs at law of decedent as it would have done if the decedent had died intestate. Since the commencement of the suit Christel Schmidt died and George E. Schmidt, the son of Eugenie Schmidt, deceased, has reached the age of twenty-one years, and has joined in the suit with the others, as plaintiff.

The amended complaint alleges, in addition to the facts above stated, that the defendants, as executrix and executor of the last will and testament of the decedent, pursuant to the directions of the will,

threaten to and will, unless restrained, convey to themselves as trustees, subject only to the dower rights of the widow, all of the property of the estate, and will hold the same as trustees for the full period of twenty-five years from the death of the testator, which is alleged to be a longer period of time than the life or lives of a person or persons then in being and twenty-one years thereafter; that the will attempts to create a perpetuity and imposes an undue and unlawful restraint upon alienation and contains gifts which may not take effect within twenty-one years from the death of the testator, plus the period of gestation, and is therefore void; that it also attempts to create a trust for accumulation for a longer period than that permitted by law; that the estate has been fully administered upon and that the plaintiff sons, Alfred Adolph Closset and Oscar Joseph Closset, are each entitled to an undivided one third, and the heirs of Eugenie Schmidt, the deceased daughter, are entitled to the remaining one third, subject only to the dower rights of the widow, of all of the property of the estate, both real and personal, and to have the executrix and executor distribute the same to them as the heirs at law of the deceased. It also alleges that none of the plaintiffs, since the death of the testator, has received any money or property from the estate, and that the threat of the trustees to execute the trust constitutes a cloud upon their title to their inheritance, and that the property of the estate, because of the invalidity of the will, should descend to them the same as it would have done had the testator died intestate. The amended complaint concludes with the prayer that the will be declared to be invalid; that the trust attempted to be created thereby be decreed to be null and void, and that plaintiffs' title to the property be

quieted, and that the defendants be restrained from distributing said property to themselves as trustees or from exercising or attempting to exercise any rights or powers over said property, and that the defendants be required to distribute said property to plaintiffs the same as if the testator had died intestate.

By a supplemental complaint the plaintiffs further allege that on July 26, 1922, together with Emelie L. Closset, they entered into a written contract whereby it was mutually agreed that the trust should be dissolved and that the property of the estate should be distributed to plaintiffs and to the defendant Emelie L. Closset, in such proportions as would have vested in them upon the death of the decedent if he had died intestate, but that the defendant Burtchaell, both as executor and as trustee, refuses to permit said agreement to be carried out or said trust to be dissolved or the property to be distributed in any other manner than that provided for under the will.

The defendant Burtchaell demurred to both the amended and supplemental complaints upon the ground that the facts stated were not sufficient to constitute a cause of suit. The Circuit Court sustained the demurrer as to each, and from a decree dismissing the suit the plaintiffs have appealed.

Plaintiffs contend (1) that the trust created by the will is of such a nature that it can be terminated by a decree of the court upon the application of all of the beneficiaries, and (2) that the trust is void- (a) because it creates perpetuities for twenty-five years in gross, and (b) because the trust for accumulation is illegal and is such an integral part of the entire scheme of the testator that it cannot be severed from the remainder of the will, and for that reason the whole will must fail; (3) that the beneficiaries

are so uncertain and remote that the will must fail;
(4) that there is an illegal restraint on alienation,
and (5) that the widow's election to take dower has
rendered the attainment of the scheme or plan of the
testator absolutely impossible.

1. It is a well-established rule that where the pur-
poses for which a trust has been created have been
accomplished and all of the beneficiaries are *sui juris,*
a court will, on the application of all of the beneficia-
ries or of one possessing the entire beneficial interest
declare a termination of the trust, and that, if all of the
beneficiaries desire its termination, the court will not
continue the trust merely for the benefit of the trustee
alone: *Brooks* v. *Davis,* 82 N. J. Eq. 118 (88 Atl. 178);
*Tilton* v. *Davidson,* 98 Me. 55 (56 Atl. 215); *Brillhart*
v. *Mish,* 99 Md. 447 (58 Atl. 28); *Whall* v. *Converse,*
146 Mass. 345 (15 N. E. 660); *Sears* v. *Choate,* 146
Mass. 395 (15 N. E. 786, 4 Am. St. Rep. 320); *Sim-
mons* v. *Northwestern Trust Co.,* 136 Minn. 357 (162
N. W. 450, L. R. A. 1917F, 736); *Donaldson* v. *Allen,*
182 Mo. 626 (81 S. W. 1151, Ann. Cas. 1915B, 723,
and authorities there cited); *Eakle* v. *Ingram,* 142
Cal. 15 (75 Pac. 566, 100 Am. St. Rep. 99); *Fox* v.
*Fox,* 250 Ill. 384 (95 N. E. 498); *Slater* v. *Hurlbut,*
146 Mass. 308 (15 N. E. 790); *Robbins* v. *Smith,* 72
Ohio St. 1, 19 (73 N. E. 1051); see, also, 2 Perry on
Trusts (6 ed.), § 920, and authorities there cited.

2. It is against public policy to restrain a person
in the use or disposition of property in which no one
but himself has any interest. Hence, when a person
is entitled absolutely to property, any provision post-
poning its transfer or payment to him, through
trustees or otherwise, is void: Gray on Perpetuities
(3 ed.), § 120.

3, 4. But a part of the *cestuis que trust* cannot
terminate the trust: *Barcroft* v. *Lessieur,* 48 Mo. 418;

*Wirth* v. *Wirth,* 183 Mass. 527 (67 N. E. 657). Nor can the trust be terminated by consent so long as it remains uncertain who will take under a bequest or devise relating to the final distribution of the trust property: *Brandenburg* v. *Thorndike,* 139 Mass. 102 (28 N. E. 575); *Godfrey* v. *Roberts,* 65 N. J. Eq. 323 (55 Atl. 353); *Ray* v. *Kelly,* 82 Miss. 597 (35 South. 165); *Olsen* v. *Youngerman,* 136 Iowa, 404 (113 N. W. 938); *Robbins* v. *Smith,* 72 Ohio St. 1 (73 N. E. 1051); *Hansen* v. *Wright* 88 Tenn. 501 (12 S. W. 1035).

5. And where the purposes for which a valid trust has been created have not been accomplished, and those purposes are inconsistent with the full beneficial ownership and control of the trust property by the *cestui,* the trust ought not to be terminated by a court, either on the application of all of the beneficiaries or of one possessing the entire beneficial interest, since in such case the trustee does not hold the property on a simple, passive or dry trust, but on an active trust requiring the performance of duties which, until performed, are inconsistent both with the termination of the trust and the surrender of the property to the *cestui: Danahy* v. *Noonan,* 176 Mass. 467 (57 N. E. 679); *Young* v. *Snow,* 167 Mass. 287 (45 N. E. 686); *Welch* v. *Episcopal Theological School,* 189 Mass. 108 (75 N. E. 139); 2 Perry on Trusts (6 ed.), § 920.

6. It is clearly evident from a reading of the will that the testator intended to vest in the trustees named a large discretion in respect to the management of his property, and that this discretion should be exercised by them throughout the entire trust period, which, by the terms of his will, was not to terminate until twenty-five years from the time of his death. The will directs the trustees to take, hold, manage and

care for all of the property of the estate, except the house and household effects, the use of which was bequeathed to the widow for twenty-five years, or for her life in case she did not survive the trust period, to collect all rents, interests, dividends, issues and profits, to repair, maintain and improve said property, to set aside one half of the net income, issues and profits of all of the real property for the purpose of creating a fund to maintain and keep the real property and the improvements thereon in repair and to improve the same, to invest said fund in safe and convertible securities if not immediately necessary for the purpose of improving the real property, and to hold the same available for the improvement of the real property, to mortgage any portion of the property when deemed necessary or practicable by the trustees for the purpose of improving any real property and also in their discretion, if the fund and the amount obtained by mortgage was insufficient to improve and keep the real property in repair, then to sell any of the unimproved property for the purpose of providing the money necessary for the improvement and repair of the real property.

The performance by the trustees of these duties is wholly inconsistent with the termination of the trust or the surrender of the trust property to the beneficiaries at this time. The will requires the trustees, while engaged in the performance of these duties, to exercise their personal judgment and discretion. The trust attempted to be created thereby is an active trust, and if valid must continue until the expiration of the trust period, since only the trustees named, if effect is given to the manifest intention of the testator, can perform these duties.

7. The will also requires the trustees, at the expiration of the trust period, to distribute the trust

property in four equal shares to the widow, the daughter and the two sons, if then in being. In case of the death of the widow before the time of distribution arrives, the will provides that her share shall be distributed in equal shares to the surviving children of the testator and to the descendants of a deceased child who are to take *per stirpes* and not *per capita,* and in case of the death of one or more of the testator's children, his share is to pass to his descendants if there are any such; otherwise to the remaining children of the testator then living and to the descendants of any deceased child of the testator who are to take by representation and not *per capita.*

Since the death of the testator both the daughter of the testator and her daughter deceased, and it is entirely possible that the widow and the two sons also may die before the termination of the trust period. The donees of the gift are therefore so uncertain that it cannot now be determined who will take under the will at the time of the final distribution. It being entirely possible that none, or only a part, of the parties to the contract, referred to in the supplemental complaint, may, at the time of the final distribution, receive the share of the trust property allotted to them, the trust, if valid, cannot, upon their mere agreement alone, be terminated before the time provided for in the will.

The defendant insists that if the remaining objections, or any of them, are sustained it will operate to defeat the manifest intention of the testator and set at naught his carefully prepared plan to have his property held intact for a period of twenty-five years after his death in order that his estate might grow and become of greater advantage to his devisees than if distributed to them immediately after

his death. That this was the intention of the testator is clearly evident from the language of the will in the fourth subdivision of the third clause thereof, where, in order to induce his widow to accept the provisions made for her by the will in lieu of dower, he stated that the interests of his wife in his estate would thereby "be greatly increased and better protected by holding the estate intact and improving the same as herein provided for."

8, 9. "The first and great rule in the exposition of wills to which all other rules must bend is that the intention of the testator expressed in his will shall prevail, provided it be consistent with the rules of law." *Smith* v. *Bell,* 31 U. S. (6 Pet.) 68 (8 L. Ed. 322, see, also, Rose's U. S. Notes). The intention of the testator must be collected from the words used in the will and must be carried into effect if consistent with law, but where it is apparent from an inspection of the will that the intention offends against public policy or some positive rule of law, the law itself defeats the unlawful intention and prevents its being carried into effect. "The rule against perpetuities is not a rule of construction, but a peremptory command of law. It is not, like a rule of construction, a test, more or less artificial, to determine intention. Its object is to defeat intention. Therefore every provision in a will or settlement is to be construed as if the rule did not exist, and then to the provision so construed the rule is to be remorselessly applied." Gray on Perpetuities (3 ed.), § 629. "The will should first be read and (if necessary) construed as if no such rule existed; then the rule should be brought to bear on the case." 1 Jarm. on Wills (6 ed.), note, *217.

That the testator intended to tie up his property, take it out of commerce and to lock up the unused

portion of the fund and prevent his devisees from alienating any part of it or enjoying any portion of it except a small proportion of the income for a period in gross of twenty-five years from the time of his death, clearly appears from the directions given to the trustees. This, the plaintiffs contend, imposed an undue and illegal restraint upon alienation and was in violation of the rule against perpetuities.

10, 11. The defendant argues that the will should be so construed as to give it a legal result, upon the presumption that the testator meant to create a legal rather than an illegal interest. If there are any doubtful or ambiguous expressions to be found in the will which are fairly capable of two constructions, one of which would produce a legal and the other an illegal result, it would be the duty of the court to give the will that construction which would produce a legal result. "Where doubtful expressions are used touching a contingent gift, there is of necessity place for construction, and the law, in such a case, favors the preservation rather than the defeat of the gift. 'It is a fair presumption that the testator meant to create a legal rather than an illegal estate.'" Note to 1 Jarm. on Wills (6 ed.), *217; Gray on Perpetuities (3 ed.), § 633. "But," says Professor Gray, "the fact that a provision would be too remote if construed in a certain way is a reason for supposing that it was not intended to be construed in that way, which, although it cannot avail against a clear form of words, may well be held to govern when the expression is ambiguous."

12. From the positive directions contained in the will it is clear that the testator intended to tie up his property and take it out of commerce and postpone the vesting of any estate or interest in it for the

period of twenty-five years from his death, and that he intended to accomplish that result by preventing, for that length of time, the alienation of his property, and by creating contingent future estates or interests which should not arise until the expiration of the trust period. If that is true the expressions found in the will by which that result was attempted to be accomplished are not doubtful, ambiguous or fairly capable of two constructions, and these provisions are therefore not open to construction. If legal they must be given effect; if illegal, they must fail, as equity will not enforce a trust created for an illegal or fraudulent purpose, nor one which conflicts with the rule against perpetuities: 3 Pomeroy's Equity, § 987.

13, 14. The defendant argues that under the provisions of the will the trustees were empowered to mortgage and sell the property of the estate. The will directs the trustees to set aside one half of all the gross income as a permanent fund to be used by them as far as necessary to improve and repair the property, and if the full amount thereof was not required for that purpose, they were directed to invest the unused portion in safe and convertible securities to be kept as a fund for that purpose only. In case the fund was insufficient to make such repairs and improvements as the trustees should, in their judgment, deem to be necessary or practicable, then they were authorized to raise additional sums for that specific purpose alone by mortgaging the real property, and if the fund itself and the amount raised by mortgage were insufficient for that specific purpose, then they were authorized to sell any unimproved real property and use the proceeds of the same in making such repairs and improvements. All ac-

cumulations in the fund not so used were to be held and distributed twenty-five years after the death of the testator. The power of the trustees to sell was further limited by the provision, "But under no other circumstances shall any piece or parcel of land of which I may die seized or possessed be sold by said trustees during the term of the trust hereby created." It is very clear that under no circumstances were the devisees themselves to be permitted to alienate the property of the estate or any interest in it. Plainly this is so because the only power to alienate the property, limited and restricted as this power was by the terms of the will, was conferred upon the trustees alone, and further because, under the terms of the will, the devisees themselves could have no interest or estate in the trust property before the time of final distribution which, upon their part, could be the subject of sale or transfer.

15. The objection, therefore, that the trust provisions of the will violated the rule against perpetuities and that the devise to the trustees was void must, we think, be sustained. In this connection it will be noted that the testator devised his real and personal property to trustees for an absolute term of twenty-five years from his death and then directed that his property should be distributed to his devisees, and that in fixing the absolute term of twenty-five years he did not avail himself of a life or lives in being at the time of his death. The rule, in such case, is that an absolute term cannot exceed twenty-one years. "If an absolute term is taken and no anterior term for a life in being is referred to, such absolute term cannot be longer than twenty-one years." 1 Perry on Trusts (6 ed.), § 380. "Where the vesting of a gift to unborn persons is postponed for a fixed term exceeding twenty-one

years, the gift is unquestionably void, although not preceded by a life; for the fact of the testator not having availed himself of the allowance of a life does not enable him to take a larger number of years, the principle being that vesting cannot be postponed for a gross term exceeding twenty-one years." 1 Jarm. on Wills (Bigelow's 6 ed.), p. 247. This principle is stated in 21 R. C. L., as follows: "Gross Period of Twenty-one Years.—Apart from a resort to lives in being as the standard for measuring the period of time for the postponement of the vesting of a future estate, the only definite period permitted by the rule against perpetuities is a term not exceeding twenty-one years. This term of twenty-one years is not dependent on the existence of the minority of any person but is a period in gross, and a testator may properly postpone the vesting of a future interest created by his will for a period of time not exceeding twenty-one years in addition to a life or lives in being; but he must not exceed this limitation, and a provision that thirty years after the testator's death an estate is to be given to his nephews and nieces, or their heirs, and if no heirs, to be divided equally among the surviving heirs, would be void." "It is to be observed," says Mr. Lewis, "that whenever lives in being do not form part of the time of suspension or postponement, the only period allowable under the rule against perpetuities is twenty-one years absolute." Lewis on Perpetuities, *172, 52 Law Library, p. 143. The same author says: "The time from which the period fixed by the rule against perpetuities is to be computed, being the creation of the limitations requiring its application, that computation must be made at the date of the deed, when the limitations are

created by instrument *inter vivos,* and at the death of the testator, when they are created by will." Id.

Mr. Sanders, in his Essay on Uses and Trusts, p. 196, says: "A perpetuity may be defined to be, a future limitation, restraining the owner of the estate from aliening the fee simple of the property, discharged of such future use or estate, before the event is determined, or the period is arrived, when such future use or estate is to arise. If that event or period be within the bounds prescribed by law, it is not a perpetuity." In commenting on this definition, Mr. Lewis, in his work on the Law of Perpetuity, *164, says: "In other words, a perpetuity is, a future limitation, whether executory or by way of remainder, and of either real or personal property, which is not to vest until after the expiration of, or will not necessarily vest within, the period fixed and prescribed by law for the creation of future estates and interests; and which is not destructible by the persons for the time being entitled to the property subject to the future limitation, except with the concurrence of the individual interested under that limitation."

Professor Gray, in his valuable work on Perpetuities, defines the rule as follows: "No interest subject to a condition precedent is good, unless the condition must be fulfilled, if at all, within twenty-one years after some life in being at the creation of the interests. * * No interest is good unless it must vest, if at all, not later than twenty-one years after some life in being at the creation of the interest." The rule, he says, governs both legal and equitable interests and interests in both realty and personalty: Sections 201, 202.

16. The defendant contends that the legal title to the trust property vested immediately in the trustees

upon the death of the testator and that the equitable title or beneficial interest vested at the same time in the beneficiaries named in the will, namely, in the widow, the two sons and the daughter, and that this vested interest will remain in them until the period of distribution arrives.

17. If defendant's contention is sound the rule against perpetuities does not apply, for, according to Professor Gray, a vested legal or equitable interest in either real or personal property is not subject to the rule against perpetuities. But when a remainder, he says, "is given to a class and such remainder is vested in certain members of the class, subject to open and let in other members long afterwards or afterwards fulfilling a condition, the shares in such remainder or interest," if they are to vest at too remote a period, will be obnoxious to the rule against perpetuities, "because their number and therefore their size may not be determinable until too remote a period." As an illustration he points out, and we refer to it because we deem the principle to be applicable, that in gifts to those members of a class who reach a required age, which all the members of the class may not reach till a period beyond the limits of the rule against perpetuities, there is often a member of the class who, if he ever reaches the required age, must do so within the limits of the rule, and as to him the time of payment is not too remote, and that if it were the only payment to him, it would be good. "But there may be further payments to him or his representatives; other members of the class, then living, may die before they reach twenty-five and then his share will be increased by other payments, which may fall beyond the limits of the rule; the whole gift

will be held void." Gray on Perpetuities, §§ 205, 205a, 322.

18. "There is no rule which limits the continuance of a trust for any period of time. A trust is no more invalid for the reason that it may continue thirty years, than is a life estate or estate in fee simple. The essential thing is that the beneficial interest under the trust vests in the *cestui que trust* within the time limited by law for the vesting of legal estates." *Loomer* v. *Loomer,* 76 Conn. 522 (57 Atl. 167); Gray on Perpetuities, §§ 232, 322, 412; 2 Washburn on Real Property, § 1447; 1 Perry on Trusts, § 383; *In re Walkerly,* 49 Am. St. Rep. 129, note.

"When estates," says Mr. Fearne, "are considered with regard to the certainty and the time of the enjoyment of them, they may be distinguished into estates vested and estates contingent, and vested estates into those vested in possession, and those vested in interest. An estate is vested," he says, "when there is an immediate fixed right of present or future enjoyment. An estate is vested in possession when there exists a right of present enjoyment. An estate is vested in interest when there is a present fixed right of future enjoyment. An estate is contingent when a right of enjoyment is to accrue on an event which is dubious and uncertain." 1 Fearne, Cont. Rem. (10 ed.) 2.

"An estate vests in possession," said the court in *Kirkpatrick* v. *Kirkpatrick,* 112 Kan. 314 (211 Pac. 146), "when there is an accrued, fixed, and indefeasible right to present enjoyment. An estate vests in interest when there is a present, accrued, fixed and indefeasible right to enjoyment at a future time." In illustration of these estates the

court supposed a case as follows: "I devise all my real estate to my wife, Mary, for the term of her life, and at her death to my two sons, James and John, share and share alike, in fee." Under such a devise the court, after defining the rights of Mary, the life tenant, says: "James and John have every privilege of ownership except present enjoyment. Enjoyment is postponed until termination of the life estate. There is, however, no qualification of their competency to enjoy when the life estate comes to an end. There is no uncertainty, the outcome of which must be awaited, no condition to be satisfied and no event to occur, except only the death of Mary, and that is certain to occur. Their estates accrue, and are fixed and indefeasible, the moment the testator dies, the same as Mary's estate. Should one of them die intestate before Mary, his estate will pass to his heirs. Should he leave a will, his devisee will enter into enjoyment at Mary's death. He may convey before her death, and his grantee will have a fee-simple absolute, vested in possession the moment she dies. Suppose, however," the court says, "the will contained a further clause like this: Should either of my sons die before his mother, leaving a son, his share shall go to his son; should he leave no son, his share shall go to his surviving brother." As to this latter clause, the court says: "In that event, no estate would vest in interest because of uncertainty, insolvable until Mary's death, that either James or John would ever come into enjoyment. While James and John would be persons *in esse,* known and ascertained at the testator's death, the uncertainty of survivorship would make it dubious who would take at death of the life tenant. Should James die before his mother, his heirs generally would not take. His son alone would take, in case he

had a son. He could not make a will, effective on the death of Mary, because, if he should not survive her, his father's will would control. He could not make a conveyance which would surely entitle his grantee to enjoyment at Mary's death. His surviving brother, John, alone might enjoy. It comes about, therefore, that an estate vested in interest is one, enjoyment of which, by a definite person, his heirs, devisees, or assigns, at termination of a precedent estate, no contingent can defeat."

19, 20. Here we have a devise to trustees in trust for an absolute term of twenty-five years and a direction to the trustees that upon the expiration of that term, "or as soon thereafter as said trustees can conveniently do so" to distribute all of the trust property in four equal shares to the widow, daughter and sons of the testator should they survive the termination of the trust period. Whether these beneficiaries will take depends wholly upon the contingency of their survival. Should any of the three children of the testator die before the time when the final distribution is to be made, leaving lineal descendants, then the distributive share of such deceased child of the testator passes to his lineal descendants; otherwise to the surviving children of the testator and to the lineal descendants then living of a deceased child of the testator. Mrs. Closset was the second wife of the testator and the mother of Oscar Joseph Closset. She was not the mother of the other two children of the testator. Should she die intestate before the expiration of the trust period her distributive share is not to descend to her son alone, as it would do if she had a vested equitable estate or interest in the trust *res,* but must, in conformity to the directions of the will, descend to the surviving

children of the testator and to the children then living of any deceased child of the testator.

It is essential to the vesting of an estate or interest in property that the estate or interest shall vest in possession or in interest. Under the provisions of the will the exclusive right to the possession of the trust property for the full trust period is vested in the trustees, and upon them the testator conferred the sole power to handle and control the property, collect the income therefrom and apply it for the uses and purposes fixed and prescribed by the will. Hence the beneficiaries possess no accrued, fixed and indefeasible right to the present enjoyment of the property; that is, the possession and use of it. Nor do the beneficiaries named in the will possess any present, accrued, fixed and indefeasible right to the enjoyment of the property at a future time, because it is impossible at this time to determine who will take under the will. All of the beneficiaries named may die before the time arrives for the distribution of the property, and in that case none of them can take any part of the *corpus* of the trust. Hence, no estate or interest in the trust property has vested in any of the beneficiaries named in the will, or can vest in them, unless they survive the trust period. Their survival is a condition precedent to the vesting of an estate or interest in them and not a condition subsequent, which would operate to defeat their estate or interest, if vested.

Under the provisions of the will directing the distribution of the property at the expiration of the trust period to the beneficiaries named, if they survive, and in case they fail to survive, to other persons possessing the qualifications fixed and prescribed by the testator, the case falls within the principle stated by Mr. Fearne, as follows: "But the

decisions do not appear to reach those cases, where neither the contingent interest itself is transmissible from any person until the contingency decides him to be an object of the limitation, nor the person or persons, to or amongst whom the contingent or future interest is directed, is or are in any degree ascertainable, before the contingency happens; as in the case of a contingent or executory limitation to the right heirs of J. S. (then living) where the description of the person to take, cannot be confined to or among any ascertainable person or persons, during the life of J. S.; nor can it therefore be said, in whom such interest is; nor, consequently, that it is in anybody, during that period; nor will it be transmissible or descendible, from any one dying before it becomes vested." 1 Fearne, Cont. Rem. (10 ed.), p. 370.

Under this authority none of the beneficiaries have any interest in the *corpus* of the trust which, if they should die before the expiration of the trust period, is transmissible or descendible from them, for, in case of the death of any of the beneficiaries before the expiration of the trust period, the directions contained in the will, and not what the beneficiaries themselves may do, will control the disposition of the trust property at the time of its distribution. The case comes within the principle announced in *Brown* v. *Williams,* 5 R. I. 309, 315, where the court said: "It is well settled that contingent and executory estates and possibilities, accompanied by an interest, as they will descend to the heir, or pass to the administrator of the person entitled, according to the nature of the subject of them, so they may be disposed of by his last will and testament. In *Roe* v. *Griffiths,* 1 Blackst. R. 605, Lord Mansfield said that, in *Selwyn* v. *Selwyn,* 'he was prepared to have shown,

with the concurrence of all his brethren, that in all contingent, springing, and executory uses, where the person who is to take is certain, so that the same are descendible, they are devisable; these being convertible terms.' And such is the established doctrine: Fearne on Cont. Rem. 366–370, and cases cited. It will be noticed that the qualification is 'where the person who is to take is certain'; for if the contingency is to decide who is to be the object of the contingent limitation, as the person, or of the persons, to or amongst whom the contingent or future interest is directed, as it cannot be determined in whom the interest is, until the contingency happens, no one can claim, before the contingency decides the matter, that any interest is vested in him to descend from, and hence to be transferred or devised by him. Although therefore it is a general rule that contingent interests, as well as vested interests, pass to the real and personal representatives of the person entitled, according to the nature of such interests, so as to entitle such representatives to them when the contingencies happen, it is an equally well-ascertained exception to the rule that the contingent devisee has no such title to pass to his representatives, and none therefore to devise or bequeath, where the contingency is such that his own existence at some particular future time is to determine whether any interest is to take effect in him, that is, whether he is to be a devisee of the contingent interest or not. Fearne on Cont. Rem. 364, note (e), 365, 370, 371; 1 Jarm. on Wills (2 Am. ed.), 652.'' See, also, *Luttgen* v. *Tiffany*, 37 R. I. 416 (93 Atl. 182).

''In the case of a gift to a person in trust for another, if there are specific and effectual directions that the trust shall continue for a specified time, and

that the trust *res* or principal shall not be turned over to the beneficiary or beneficiaries until a certain time named, the *cestui que trust* cannot be considered as having a vested interest therein until the arrival of the time named; and consequently, it would seem, if the time named is more remote than the period allowed by the rule, the gift would be void. It has been so decided in a number of decisions in this country." 1 Tiffany on Real Property, § 155.

21. As this is not a charitable trust, but a private trust, for it to be valid it is necessary that the beneficial interest should vest absolutely in some individual or individuals who may be definitely ascertained within the limits allowed by law for the vesting of estates. Private trusts of that kind cannot be extended beyond the legal limitations of a perpetuity: 1 Perry on Trusts (6 ed.), § 384. Since the testator did not avail himself of the allowance of a life or lives in being, but devised his property to trustees in trust for an absolute term, the limit allowed by law for the vesting of the beneficial interest is twenty-one years, and no more. Under the provisions of this will, the beneficiaries not being ascertainable before the time of distribution arrives, the vesting of the beneficial interest is postponed for twenty-five years, and being for a longer period than the law allows is too remote, and the gift is void, for, as said by Mr. Jarman, "A gift, the vesting of which is postponed for twenty-one years and a day, is void." 1 Jarman on Wills (6 ed.), *216.

Where there are contingent interests which cannot be determined or adjusted until the period of distribution arrives, the trust cannot be terminated, for it cannot be determined what share, if any, the present *cestuis que trust* will receive at the end of

the trust period, nor who of them, if any, will at that time be entitled to receive any part of the trust property.   See 2 Perry on Trusts (6 ed.), § 920, and authorities there cited.   But if defendant's contention be true, that the full beneficial interest did vest in the beneficiaries named upon the death of the testator, and that there are no contingent interests which cannot be determined and adjusted at this time, then the trust is one which, by its very nature, could and should be terminated on the application of all of the beneficiaries, they all being *sui juris* and not under any disability, upon the principle that where one is the absolute owner of property, in which no one but himself has an interest, any provision postponing his enjoyment and use of it is void.   But, as we have attempted to show, the beneficial interest in the trust *res* has not vested, since there is no one for it to vest in until the expiration of the trust period, which period was fixed by the testator to terminate at the expiration of an absolute term of twenty-five years and the beneficiaries who are to take under the will cannot, until the contingency happens, be determined.   As this absolute term is more than twenty-one years and the future interests are not to vest until more than twenty-one years from the death of the testator, the gift to the beneficiaries named is void because the vesting is to be postponed beyond the limit fixed and prescribed by law for the vesting of future interests in property.

22. It is, of course, possible that all of the beneficiaries named in the will may survive the period when the trust is to be terminated and if effect could be given to the expressed intention of the testator, both the legal and equitable title would then vest in them.   This possibility, however, is of no importance

because the question of remoteness is to be determined by reference to possible events and not to those which actually occur, for ''the law looks forward from the time the limitation is made to see what may be, not backward to see what has been.'' *White* v. *Allen*, 76 Conn. 185 (56 Atl. 519). ''A limitation to such persons or upon such events that it may lead to a perpetuity under the rule, is void, whatever might be found to be the facts if one waited long enough to ascertain them.'' 1 Schouler on Personal Property (5 ed.), § 146. ''It is not enough that a contingent event may happen or even that it will probably happen within the limits of the rule against perpetuities; if it can possibly happen beyond those limits an interest conditioned on it is too remote.'' Gray on Perpetuities, § 214.

23, 24. The rule against perpetuities is concerned only with the time of vesting of an estate and not with the duration of an estate already vested. The remoteness against which the rule is directed is remoteness in the commencement or first taking and not in the cesser or determination of them. If the estate is to arise within the prescribed period it may be so limited as to be determined on the happening of any event, however remote: Lewis on Perpetuity, p. 173; 1 Tiffany on Real Property, § 152. Defendant relies upon this rule, but the rule is inapplicable here because no estate or interest has vested or can vest, under the will, in any of the beneficiaries named until the period of final distribution arrives. The interest of the beneficiaries in the trust *res* is not vested but contingent upon their survival of the trust period. As the happening of the event upon which the contingency depends cannot take place within twenty-one years from the death of the

testator the interest made contingent upon the happening of that event is too remote.

25. Defendant contends that the gift over to the beneficiaries upon the termination of the trust period is good as an executory devise. It is not necessary to determine whether the gift over is a remainder or an executory devise since the gift will not vest in some ascertainable person or persons within twenty-one years from the death of the testator as the common-law rule against perpetuities obtains in this state: See *Imbrie* v. *Hartrampf*, 100 Or. 589 (198 Pac., 521); *In re Will of Pittock*, 102 Or. 159 (199 Pac. 633, 202 Pac. 216, 17 A. L. R. 218).

26. That the trust provisions of the will are void because they offend the rule against perpetuities is clear. Not only do these contingent future interests of the four beneficiaries named not vest within twenty-one years from the death of the testator, but it is possible, under the provisions of the will, for future interests to vest more than twenty-one years from the death of the testator, plus the period of gestation, in descendants of a deceased child or children of the testator who were not born or in being at the time of his death. Provisions under which such future interests may vest at so remote a period are void.

27, 28. It is also clear that the trust provisions in the will are void because they impose an unlawful restraint upon the alienation of the trust property in not allowing an equitable interest therein to vest or the property itself to be distributable and thereby become alienable until beyond the limit fixed by the rule against perpetuities. While it must clearly appear that it was the intention of the testator to create an unlawful restraint against alienation (*Brooks* v. *Davis*, 82 N. J. Eq. 118 (88 Atl. 178), such an intent

upon the part of the testator is obvious from the provisions of the will. The bequests and devises provided for in the will will not vest in possession or become distributable within the period of twenty-one years from the testator's death, and not being vested or distributable, are not alienable. Under these provisions, no matter how great the exigencies of the family might be, neither the heirs nor the trustees, nor all of them combined could sell or dispose of any part of the real property or encumber the same by a mortgage to meet such exigencies for a period of twenty-five years after the death of the testator. During that whole period the property itself was inalienable. The limit provided for in the will when the trust property will vest and be distributed and the absolute ownership therein be acquired by anyone is for a longer period of time than that fixed by the rule against perpetuities.

29. But it is contended that other portions of the trust may still be sustained, even though a part of the trust is invalid. The will provides for the setting aside of one half of the rents, issues and profits of the property for the creation of a fund to be used in the improvement and repair of the property and for the distribution of the other half after the payment out of it of the expenses of the administration of the estate and of the trust monthly in four equal shares to the widow and children of the testator. . These provisions, it is contended, are legal and may be severed from the illegal provisions. This contention is answered in the language of the court in *Tilden* v. *Green,* 130 N. Y. 29 (28 N. E. 883, 27 Am. St. Rep. 487, 14 L. R. A. 33), where it was said: "The appellants invoke the aid of the principle that where several trusts are created by a will which are independent

of each other, and each complete in itself, some of which are lawful and others unlawful, and which may be separated from each other, the illegal trusts may be cut off and the legal ones permitted to stand. This rule is of frequent application in the construction of wills, but it can be applied only in aid and assistance of the manifest intent of the testator and never where it would lead to a result contrary to the purpose of the will or work injustice among the beneficiaries or defeat the testator's scheme for the disposal of his property. The rule as applied in all reported cases recognizes this limitation, that when some of the trusts in a will are legal and some illegal, if they are so connected together as to constitute an entire scheme, so that the presumed wishes of the testator would be defeated if one portion was retained and other portions rejected, or if manifest injustice would result from such construction to the beneficiaries, or some of them, then all the trusts must be construed together and all must be held illegal and must fall.''

30. In the instant case there can be no separation of the trust created by the will whereby a part may be held valid and the rest invalid without doing violence to the intention of the testator. It is all one entire scheme and no part of the scheme intended by the testator can be carried out except through the trust itself. If the trust is illegal, the entire plan of the testator must fail. Since the trust *res* does not pass to the trustees because of the invalid provisions of the will, but passes to the heirs of the testator just as it would have done if he had died intestate, the entire scheme of the testator must fail because there is nothing left for the trust to operate upon. The trust property, therefore, because of the illegal trust

provisions, descended to the heirs of the testator as it would have done in case of an intestacy.

31. To prevent the possibility of being misunderstood we again call attention to the fact that there is an express limitation over the trust property to other persons in the event that the beneficiaries named in the will are not in being at the time of the final distribution of the *corpus* of the trust. This postpones the vesting for twenty-five years after the death of the testator, and for that reason the limitation is void. It is not a case where the testator has postponed the vesting for twenty-five years and directed that the property should ultimately vest in persons who are living both at the time of the testator's death and at the time of the vesting which would be good since that would render it impossible for the term to extend beyond the period of an existing life: See Schouler on Personal Property (5 ed.), § 146. It is a settled rule of law that "the right of a person to dispose of his property by will to take effect after his death is one conferred by law, and any attempted disposition of property by will not sanctioned by law is void." *McDermid* v. *Bourhill,* 101 Or. 305 (199 Pac. 610, 22 A. L. R. 428).

The decree of the lower court will therefore be reversed and a decree will be entered requiring the executrix and executor to distribute the property of the estate to the heirs at law of the testator the same as if the testator had died intestate, and it is so ordered.    REVERSED AND DECREE ENTERED.

McBRIDE, C. J., not sitting.

PIPES, J., took no part in the consideration of this case.