In the Matter of the Guardianship of Fuchsia Fern Cornia, Incompetent.

Fuchsia Fern CORNIA, Appellant,

v.

Cal CORNIA et al., Respondents and Cross-Appellants.

No. 14139.

Supreme Court of Utah.

March 1, 1976.

---

4. Rule 60(b)(1).

George B. Handy, Ogden, for appellant.

Burton H. Harris and M. C. Harris, of Preston, Harris, Harris & Preston, Logan, for respondents.

CROCKETT, Justice:

Fuchsia Fern Cornia, who is an 81-year old widow, appeals from a finding that she is incompetent and an order appointing a guardian of her estate. She contends that the evidence does not support the finding nor justify the order.

Prior to her husband's death, on July 31, 1971, Mrs. Cornia lived on their ranch in Rich County, Utah. There are seven living children, Cal, Dale, Don, Ross,

Jerry, Grace McKinnon and Bessie Wadsworth.[1]

Sparing exact detail of money values, Mrs. Cornia's share of the family (her husband's) estate consisted of these assets: five $5,000 certificates of deposit, held jointly, one with each of her five sons, and two $2,500 certificates held jointly one with each of two grandsons; also a $6,500 time certificate held jointly with her son Jerry. In addition, she owned a lot in Bountiful which had been given to her by her mother; the family home in Woodruff; and a savings and. checking account in the First National Bank of Evanston, Wyoming.

On January 3, 1972, five months after her husband's death, Mrs. Cornia executed a warranty deed to her Bountiful property to her sons Jerry and Don, and five days later, on January 8, she executed a trust agreement in favor of the same sons to the same property. On that same day she executed a will which left practically all her property to her sons. Mrs. Cornia testifed that she did not recall making the will or executing either the deed or the trust agreement. She said this was because at that time she was engaged in the administration of her husband's estate and had been "signing papers by the bushel."

After her husband's death, Mrs. Cornia moved from her home in Woodruff to a trailer adjacent to her son Jerry's house in Weston, Idaho. She became lonely there and went to Arizona to visit her daughter, Grace McKinnon. She did not return to Weston, but moved in with her daughter Bessie Wadsworth, in Ogden, Utah, saying that she preferred going to a rest home where she could be with other elderly people, rather than returning to Weston. This appears to have given offense to her sons. They assert that they believe their mother is being unduly influe. d by her daughters.

Before leaving for Arizona, Mrs. Cornia withdrew approximately $9,000 from her savings account in Evanston after she learned that Mrs. Don Cornia had been making withdrawals without her consent. Upon her return from Arizona, Mrs. Cornia requested her sons to give her the certificates of deposit which were in their possession. This was refused and the sons instituted these proceedings to have a guardian appointed, to which the daughters indicate their opposition.

The degree of incompetence requisite to the appointment of a guardian is governed by Section 75–13–20, U.C.A.1953:

The words "incompetent," "mentally incompetent" and "incapable," as used in this title, shall be construed to mean any person who, *though not insane, is, by reason of old age,* disease, weakness of mind, *or from any other cause, unable, unassisted,* to properly manage and take care of himself or his property, and by reason thereof would be likely to ·be deceived or imposed upon by artful or designing persons. [Emphasis added]

These provisions, stated in the disjunctive "or," so that any one of the grounds could justify the order, are both general and liberal. From them it plainly appears that if because of either physical or mental limitations, or a combination of them, a person is unable to properly take care of herself or her property, or would likely be deceived or imposed upon, the court is authorized to appoint a guardian.

1. We review the findings and conclusions of the trial court with considerable indulgence, and will disturb its findings and judgment or order only if there is no substantial basis in the evidence for them. *Pagano v. Walker,* 539 P.2d 452 (Utah 1975) ; *In re Lamont's Estate,* 95 Utah 219, 79 P.2d 649 (1938) ; *In re Swan's Estate,* 51 Utah 410, 170 P. 452 (1918).

■ There was a great deal of testimony, both pro and con relating to the issue of Mrs. Cornia's competence. Recognizing the prerogative of the trial court as the trier of the facts, it is our duty to assume that he believed those aspects of the evidence which support his findings. We excerpt certain significant parts ·of the evidence: Her doctor, J. C. Hayward, testified: that he had examined Mrs. Cornia on several occasions between February 13, 1973, and May 16, 1974; that she was extremely hard of hearing, had poor eyesight, and suffered from arteriosclerosis, a disease which had a particular effect upon the brain and diminishes the ability to reason; and that this normally increases as one grows older. He also stated that in his opinion Mrs. Cornia was senile to a greater degree than is normal for a person her age.

There was testimony by the son-in-law, Robert Wadsworth, that if Mrs. Cornia had confidence in a person, he could easily impose upon and take her property from her. There was also testimony by Mrs. Don Cornia that Mrs. Cornia relied on her and her husband to pay her bills by signing blank checks and leaving them to be filled in and mailed.

■ From the foregoing it seems clear that the trial court was not without justification for believing that a guardian should be appointed to safeguard the interests of Mrs. Cornia; and that this court would not be justified in reversing that ruling. In this connection we think it is appropriate to point out that if she is indeed now competent both physically and mentally to handle her affairs, there is statutory authority under Section 75–13–21, U.C.A. 1953, for proceedings to have her declared competent and the guardianship terminated.

■ Respondents cross-appeal. They argue that the trial court erred in declaring null and void the will and trust deed Mrs. Cornia had executed. We are convinced of the merit of this argument. The petition, filed in October, 1974, alleged that she had "become incompetent in recent months and that particularly within the past two months" by reason of her age and physical infirmities, had become "confused in her mind and unable to understand the circumstances of her estate." The answer filed was a general denial. Thus the foregoing was the only issue raised and tried in this proceeding. More specifically, the issue as to her capacity and state of mind in executing the will and trust agreement in January, 1972, was neither raised nor tried. While it is true that our rules provide for liberality in procedure and the granting of relief to which the evidence shows a party is entitled, this does not go so far as to authorize the granting of relief on issues neither raised nor tried.

■ Though not essential to our resolution of the problems presented on this appeal, we further observe that the issue as to Mrs. Cornia's capacity and state of mind in executing the will and the trust deed under the circumstances existing in January, 1972, may arise at some subsequent time, if and when those documents may be presented and relied upon as authentic; and a further if, someone challenges one or both of them. We also note that the test as to capacity to execute a will,[2] or a trust deed, or enter into other transactions, is quite different from the requirements of Section 75–13–20, U.C.A.1953, relating to the appointment of a guardian.

The order appointing a guardian is affirmed. But the declaration that the will and the trust deed are nullified is reversed. No costs awarded.

---

2. See *In re Hanson's Estate*, 87 Utah 580, 52 P.2d 1103; *In re Richards' Estate*, 5 Utah 2d 106, 297 P.2d 542.

**894**

HENRIOD, C. J., and ELLETT, J., concur.

MAUGHAN, Justice (concurring and dissenting):

With that part of the main opinion which sustains the trial court in its appointment of a guardian, I concur. From that part of the main opinion which reverses the trial court's judgment declaring the will and trust deed executed in January, 1972, to be void, I dissent. The main opinion says that the only issue raised and tried in the proceeding was the incompetency "in recent months and that particularly within the past two months by reason of her old age and physical infirmities."

The trial court had before it evidence of Mrs. Cornia's activities from the date of her husband's death until the date of trial. Part of this evidence, advanced by the cross-appellant, was the statement that Mrs. Cornia never has taken care of her own affairs. The sum total of the proof produced believable evidence, upon which the trial court arrived at its decision; that not only should the petition for guardianship be granted, but that the prior conveyances and testamentary disposition should not be operative.

It appears apparent that all of these issues were tried by implied consent, and a judgment was rendered thereon. Our practice provides for, and allows this.[1] The rule is, "When issues not raised by the pleading are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings . . . failure . . . to amend does not affect the result of the trial of these issues." I submit there is substantial basis in the evidence for the findings and judgment of the trial court, thus its judgment should be sustained.

TUCKETT, J., concurs in the views expressed in the opinion of MAUGHAN, J.