516 P.2d 1112

**LOCO CREDIT UNION, Plaintiff-Appellee and Cross-Appellant,**

v.

**Fred A. REED and Janet Reed, Defendants-Appellants and Cross-Appellees.**

**No. 9747.**

Supreme Court of New Mexico.

Dec. 14, 1973.

**730**

Shipley, Durrett, Conway & Sandenaw, Wayne A. Jordon, Alamogordo, for defendants-appellants.

S. Thomas Overstreet, Alamogordo, for plaintiff-appellee.

## OPINION

OMAN, Justice.

Plaintiff, Loco Credit Union, brought suit against defendant, Fred A. Reed, to recover on a note executed on March 10, 1972, and to foreclose Loco's claimed interest in collateral purportedly pledged by Fred to Loco as security for payment of the note. Janet Reed, the former wife of Fred, claimed an interest in the said collateral, and, therefore, was made a party defendant. The collateral consisted of funds on deposit in a shares account with Loco. The position of Loco was that these funds were held in a joint account by Fred and Janet, and so much thereof as was necessary to satisfy the indebtedness of Fred on the note was subject to Loco's lien. Janet's position was that the funds constituted a trust res; that Fred was the trustee at the time of the execution of the note on March, 10, 1972; that she had been named as successor trustee on June 2, 1972; and that as such successor trustee she was entitled to all funds on deposit with Loco in the shares account.

Fred defaulted and judgment was entered against him for the balance owing on the principal and interest of the note and for attorney fees. This portion of the judgment is not in question on this appeal.

The trial court held that the funds on deposit in the shares account were owned jointly by Fred and Janet; Loco had a valid first lien against one-half thereof; and Janet was entitled to the other half. Judgment was entered accordingly. It is from this portion of the judgment that Janet has appealed and Loco has cross-appealed. We reverse.

The questions to be resolved on this appeal are:

(1) Whether a trust was created;

(2) If a trust was created, whether it was revocable; and

(3) If an irrevocable trust was created, was a breach of this trust proven.

Fred and Janet were divorced by final decree entered on June 16, 1969 in a prior suit. They were the parents of three minor children. They were represented by counsel in these divorce proceedings and entered into a detailed written stipulation, subject to the approval of the trial court, concerning the custody and support of the children, division of community property, etc. The stipulation was approved by the trial court and incorporated into and made a part of its said final decree. No appeal was ever taken from this decree or from any portion thereof. One of the provisions of the stipulation and, consequently, of the final decree, was:

"That it is understood by and between plaintiff [Fred] and defendant [Janet] that they have on deposit with the L. O. Co. Credit Union [Loco] the sum of approximately $2,018.00, said account being deposited in the name of the plaintiff;

that said sum shall be retained in trust by the plaintiff for the expenses for the college education of Bruce Allen Reed, the minor son of the parties, and so much of said sum as shall not be used for the college education of Bruce Allen Reed shall be used toward the expense of the college education of the minor daughter, Nancy Lynn Reed; * * *."

Loco received a letter and a copy of the stipulation and final decree on December 29, 1970 from Janet's attorney. These were reviewed by Loco's manager. Thereupon there was typed across the face of Loco's ledger covering the account in question for the period ending December 31, 1970 the following: "NO SHARE WITHDRAWALS EXCEPT FOR COLLEGE SEE LETTER IN FILE."

No further action was taken by anyone to transfer or have transferred the funds in the account from the names of Fred and Janet. Apparently some dispute arose between Fred and Janet over the management of the account, and under date of March 24, 1971 Loco's attorney wrote a letter to Janet, with copies thereof to Loco, Fred and Janet's attorney, in which it was stated in part:

"* * *. Neither L.O.CO. Credit Union nor myself can settle this dispute for you. It is my opinion, based on the language used in the Final Decree, that Mr. Reed has the authority as trustee to withdraw sums from this account."

On March 10, 1972, Fred executed a promissory note in favor of Loco and undertook to pledge the funds in the account as security for the payment thereof.

The district judge, who had presided over the divorce proceedings and who had undertaken to establish the trust by the decree entered in the divorce proceedings on June 16, 1969, recused himself and another district judge was designated by the Chief Justice of this Court to preside over that case. By order entered in that case on June 22, 1972, Fred was removed as trustee

of the account and Janet was appointed as trustee.

In addition · to the foregoing recited facts, the trial court found: ·

(a) That pursuant to the final decree entered in the divorce action on June 16, 1969, Fred was to hold the funds in the account "for the minor children of the parties."

(b) Loco had knowledge that the funds in the account were pledged by defendant as collateral for a personal loan.

(c) Loco acknowledged at trial that it understood the duties and obligations of a trustee as to trust funds.

The trial court refused to find that Loco knew the funds were held in trust by Fred for the children as beneficiaries, and refused to conclude that a trust existed or that Janet was entitled to the balance in the account as successor trustee. As stated above, the trial court concluded that the funds were held and owned by Fred and Janet jointly, even though it found these funds were to be held by Fred for the minor children.

Janet's position, concerning the existence of the trust, is that the trust was clearly created by the stipulation and the court decree approving the same. Loco contends that no trust was established because of (1) lack of necessary intent on the part of Fred and Janet to establish a trust and (2) lack of necessary certainty as to the essential elements of a trust.

■ As to the matter of intent to create a trust, the evidence is that an eight page written agreement in the form of a stipulation was executed and acknowledged under oath by both Fred and Janet whereby they agreed as to the division of their obligations and community property and upon the custody, support and educational expenses of and hospital and surgical insurance for their minor children. One of these agreements, which is quoted above, was that the funds they had in the account with Loco "* * * shall be retained in

trust by the plaintiff [Fred] * * *" for educational expenses for two of the children. Fred and Janet were each represented by a reputable attorney. It is apparent that these attorneys either prepared, or very largely prepared, the stipulation, and that they certainly approved and filed it in the divorce proceedings with the request that it be approved by the district court. It was approved by the district judge presiding over those proceedings and was incorporated into the decree entered by the court in that cause. This decree was approved by the attorneys for Fred and Janet.

It is true, as found by the trial judge presiding over the cause now before us on this appeal, that subsequent to the entry of the decree in the divorce proceedings on December 20, 1970, Fred and Janet treated the account as a joint account. At least they did so to some extent. However, we fail to understand how this subsequent treatment by them of the account can be held to establish a lack of intent on their part to create the trust which they had so clearly created and intended to create by their written stipulation, which had been approved at their request by the court and made a part of the court's decree, and which neither of them has ever claimed they did not create or intend to create. The language creating the trust was clear and unequivocal, and as of June 22, 1972, upon the written motion of Janet, the trial judge in the divorce proceedings entered a written modification of the decree previously entered in those proceedings on December 20, 1970. This modification order related entirely to the trust, and, among other things, removed Fred as trustee and appointed Janet as successor trustee. Both Fred and Janet, through their respective attorneys, participated in these modification proceedings and approved the modification order as did Fred personally. No attack upon this modification order has ever been made, attempted or even encouraged by either Fred or Janet, whose intent is being questioned by Loco.

Loco relies upon the cases of Quattlebaum v. Hendrick, 179 Ark. 494, 16 S.W.2d 591 (1929); People v. Pierce, 110 Cal. App.2d 598, 243 P.2d 585 (1952); Ward v. Buchanan, 22 N.M. 267, 160 P. 356 (1916); Fleck v. Baldwin, 141 Tex. 340, 172 S.W. 2d 975 (1943). Neither the factual situation nor the principles announced in any of these cases supports the position of Loco under the facts of this case.

Loco's contention, that the trust must fail because it lacked the necessary certainty as to essential elements of a trust, is predicated upon its claim that the instrument creating the trust—the stipulation in the divorce proceedings—failed to detail the disposition to be made of the interest to be paid by Loco on the principal of the trust account—the amount of $2,018.00 on deposit in the account at the time of the execution of the trust instrument—and of any additional deposits which might be made in this account; failed to provide whether or not it was intended to be a revocable or an irrevocable trust; failed to detail the rights and duties of the trustee; failed to provide "how directly a withdrawal must be related to [the children's college education] in order to be a valid withdrawal"; and failed to specify when the trust was to terminate.

As to the matter of interest on the principal amount of the trust property, it would appear obvious that interest paid for the use of trust funds, unless expressly provided otherwise, would become a part of the trust property. The earning power of the funds was not reserved by settlors or excluded from the property interests the beneficiaries were to enjoy. It is the usual duty of trustees to cause a trust to produce income for the benefit of the trust. Bogert, Trust and Trustees, § 611 (2d ed. 1960); Restatement, Second, Trusts, § 181 (1959). See also Revised Uniform Principal and Income Act, being §§ 33–5–18 to 33–5–32, N.M.S.A.1953 (Supp.1971).

No additional funds were deposited in the account. Thus, no question is

presented as to whom such additional deposits would belong or for what purposes they might properly be used.

■ There was no provision in the written instrument evidencing the creation of the trust reserving unto the settlors the power to revoke the trust. Therefore, the trust was irrevocable. 4 Scott on Trusts, § 330.1 (3d ed. 1967) and cases cited therein holding in accord.

■■ The rights and duties of the trustee not detailed in the trust instrument are sufficiently detailed in the law of trusts. No claim has been made by either of the settlors, who are the only ones who have served as trustees, or by the beneficiaries or anyone on their behalf, that there has been any question as to the rights and duties of the trustee, except as to the extent above indicated. The use to be made of the trust property is clearly stated in the written instrument evidencing the creation of the trust. Minute details, as to the precise items for which funds in an educational trust must be used, are not necessary for the trust's validity. In fact, a detailed limitation upon the expenditures to be made for precisely anticipated items would be far more likely to defeat the beneficial purposes of an educational trust than would the general provision that the trust funds are to be used for the college education of the beneficiary.

■■ Since the written instrument evidencing the trust's creation fails to show an agreement as to the date of the termination of the trust, it will continue until the trust purposes have been accomplished. The time of the ending of the trust need not appear in the writing. Bogert, Trust and Trustees, supra, § 87 at 489.

The manifestation of the intent of the settlors, Fred and Janet, was clear and certain. It consisted of a written, acknowledged and court approved stipulation, which was also approved by their attorneys. This manifestation of their intent, and the legal effect given thereto by the

court to which it was presented at their request, places that legal effect beyond question in the present suit. See 1 Scott on Trusts, supra, § 23 generally as to the requirement of manifestation of intent.

The claimed deficiencies in the trust writing as to details of the administration of the trust have presented no great problems to the trustees or to the judge charged with the administration thereof.

■ Loco next contends the trust was revocable and was revoked by Fred and Janet by making or attempting to make withdrawals from the trust account. They rely upon cases involving a Totten trust—first so called and recognized in the case of Matter of Totten, 179 N.Y. 112, 71 N.E. 748 (1904). The trust with which we are here concerned is not a Totten or a tentative trust which could have been revoked by Fred or Janet at their will had they sought to revoke it. For a discussion generally on Totten trusts, tentative trusts, or savings bank trusts, as they are usually called, see 1 Scott on Trusts, supra, §§ 58, 58.1 and 58.2.

■ Loco finally contends that even if an irrevocable trust was created, no breach of the trust was proven. The breach, with which we are here concerned, was the pledging of the shares, or trust funds, with Loco as security for a personal loan by Loco to Fred, when Loco had full knowledge of the existence of the trust and acknowledged that it understood the duties and obligations of a trustee as to trust funds.

Loco contends the record is not clear on this question of a breach. However, Loco's manager, who was the only witness called at trial and whose testimony on this particular issue is the only evidence thereon, testified on direct examination:

"Q. Now, do you know what the loan proceeds were used for by the defendant, Fred A. Reed?

"A. No, sir."

On cross-examination she testified:

"Q. Mrs. Green, I read the final decree and in the stipulation that you knew that Mr. Reed was the trustee only of the funds on deposit with LOCO.

"A. Right. Yes, sir.

"Q. And your attorney, further, told you in exhibit no. 3 that Mr. Reed was only the trustee of these funds.

"A. Yes, sir.

"Q. And I am sure he also explained to you the duties of a trustee and the fact that a trustee cannot pledge funds deposited with you in a trust.

"A. Yes, sir. I'm sure that he did.

"Q. Regardless of this then, you still loaned the money to Mr. Reed in March of 1972, knowing full well that he was only the trustee of funds on deposit with you?

"A. Yes, sir.

"Q. And you then allowed him to pledge the trust funds for his own personal use?

"A. Yes.

"Q. He told you the time that he borrowed the money in 1972, that it was for a business venture in Arizona that he was interested in, motor vehicle, small-parts business, or something like that, and he needed additional money, and this was the use of it?

"A. He just told me it was for business expansion.

"Q. Of his own personal use?

" * * *.

" * * *. Q. He wanted it for his own personal use, didn't he?

"A. Yes, sir."

On redirect examination she testified:

"Q. Now, Mrs. Green, as far as the loan proceeds obtained by Mr. Fred Reed, as indicated on the note introduced into evidence as plaintiff's exhibit no. 1, those loan proceeds, you have no personal knowledge or do you have any personal knowledge, of what those funds were used for?

"A. No, sir."

The testimony of Mrs. Green is not necessarily inconsistent. It is clearly consistent with the fact, as found by the trial court, that Loco knew the funds on deposit (the trust funds) were pledged as security for a personal loan to Fred. Mrs. Green may not, as she testified, have known the precise use made by Fred, of the borrowed funds, but she did know the trust funds were pledged as security for a personal loan to him and she knew this was wrong as evidenced by her following testimony:

"Q. To sum up your testimony, then, at the time you loaned the money to Mr. Reed in March of 72, you, at that time, knew that he was the trustee only for funds that were on deposit, didn't you?

"A. Yes, sir.

"Q. And it had been explained to you by your attorney that a trustee cannot pledge his funds?

"A. Yes, sir."

The trial court found, as shown above, that Loco " * * * had knowledge that the funds on deposit with the Plaintiff [Loco] were pledged by Defendant, Fred A. Reed as collateral for a personal loan." This finding is not challenged by Loco and is thus a fact in this case. Trinidad Industrial Bank v. Romero, 81 N.M. 291, 466 P.2d 568 (1970); Goodyear Tire and Rubber Company v. Williams, 76 N.M. 509, 416 P.2d 521 (1966); Begay v. First National Bank Of Farmington, 84 N.M. 83, 499 P.2d 1005 (Ct.App.1972). This act of pledging trust funds by the trustee for his personal benefit, which was concurred in and approved by Loco, was wrong. See Garcia v. Sanchez, 64 N.M. 114, 325 P.2d 289 (1958); Bogle v. Bogle, 51 N.M. 474, 181 P.2d 181 (1947).

The judgment of the trial court should be reversed and the cause remanded with directions to vacate those portions of the

judgment whereby it awarded Loco a valid lien on one-half of the funds in the share account, awarded Janet the remainder of the funds in the share account, and ordered that Loco and Janet should bear their respective costs, and to take such other and further action as is required to fully dispose of all issues raised by the pleadings in this cause.

It is so ordered.

STEPHENSON and MONTOYA, JJ., concur.