Matthew **PAGANO** et al., Plaintiffs
and Respondents,

v.

Mary P. **WALKER**, Defendant and
Appellant.

No. 13864.

Supreme Court of Utah.

Aug. 12, 1975.

ings and loan accounts in joint tenancy with the daughter, Mary: one in 1963, before Luke's death, and four in 1965, shortly after his death. Lucy died June 12, 1972. Her will provided for distribution of her estate in equal shares to the four children, Matthew, Carmen, Mary and Milleo. The other property, passing under the will, was appraised at $39,774, whereas the joint accounts totaled $73,544.

Mary claims ownership of these funds as the surviving joint tenant. As opposed to this, the plaintiffs aver that their mother did not intend that Mary should be the owner of the funds, but a trustee for the benefit of all four children. They base this upon a statement which they say Mary made to them shortly after their mother's death, viz: "Mother told me to pay her personal bills, keep a little out for my arthritis, and divide up the rest." The evidence is in diametric conflict, each witness testified according to his own interest. The three plaintiffs and Margaret, the wife of Milleo, said they heard Mary make that statement; whereas, Mary denied that she had ever made it, or that her mother had given any such direction.

It is significant to point out that the evidence does not show just when the mother, Lucy, may have made the statement to Mary; and also that the only evidence as to what was said at the time the accounts were opened was simply that the mother Lucy had assented to the terms and conditions of a joint-tenancy account, as explained to her by the bank teller. Except for the foregoing, the only other evidence supportive of plaintiffs' contention relates to their having worked in the family enterprise; and the fact that during the lifetime of their mother, their sister Mary did not draw funds from the accounts.

In submitting the issue to the jury the court asked whether they believed that the evidence was clear and convincing that Mary had made the above-quoted statement. Upon return of their answer, "Yes," the judge indicated that he agreed with this finding, but also separately made

Ira A. Huggins and I. Gordon Huggins, Huggins & Huggins, Ogden, for defendant and appellant.

David S. Kunz, Kunz, Kunz & Rencher, Ogden, for plaintiffs and respondents.

CROCKETT, Justice:

The plaintiffs, three adult sons of Luke and Lucy Pagano, both now deceased, sued their sister Mary Pagano Walker to have a trust imposed upon money in bank accounts in the joint names of Mary and the mother. To an advisory jury the court submitted a question: whether defendant Mary had made the statement discussed below relating to her being a trustee of the funds. The jury answered "Yes"; and the judge made findings and entered judgment for the plaintiffs. Defendant appeals, contending that the plaintiffs did not show any sufficient basis to justify disregarding of the joint deposit card contract and the imposition of a trust.

Luke and Lucy Pagano were Italian immigrants who had settled in Weber County and spent their adult lives in truck farming to make their living and raise their family. They were industrious and frugal; and invested their savings in land, mortgages and escrows, which they held in joint tenancy. Luke died January 5, 1965, leaving Lucy as the surviving joint tenant of a sizeable estate. Lucy opened several bank and sav-

# 454

the same finding his own; and on the basis thereof imposed a constructive trust upon the accounts and ordered them to be divided equally among the parties.

The joint account is a tripartite contract between the bank and the joint depositors; and it is also a contract between the joint depositors themselves. Upon a showing of its due execution it is entitled to the presumption of validity and should be given effect according to its terms. That is, it creates an ownership of the funds in joint tenancy, with a right of survivorship so that upon the death of one, the other becomes the owner of the funds.[1] It is of course subject to attack only on the same basis as any other written agreement or contract, by showing that because of fraud, duress, undue influence, mistake, incapacity or other infirmity that in equity and good conscience it should not be enforced. But because of the verity accorded written instruments, its effect can be overcome only by clear and convincing evidence.[2]

In determining whether the evidence meets this standard, in equity cases such as this is, this court may review the facts.[3] However, it has long been established and reiterated by this court in numerous cases that due to the advantaged position of the trial court we will review its findings and judgments with considerable indulgence, and will not disagree with and upset them unless the evidence clearly preponderates against them, or the court has mistaken or misapplied the law applicable thereto.[4]

Turning to the record in the light of the foregoing rules, there are several observations to be made. It is generally recognized that testimony concerning the intent of one who is deceased should be looked upon with caution;[5] and this is particularly true when such testimony is suffused with self interest.[6] Also to be considered is the proposition that the creation of a trust requires that the terms thereof be set forth with sufficient certainty that a person of ordinary intelligence could understand them and carry out the intent of its creator.[7] The terms of a contract cannot be overcome and a trust created in lieu thereof fashioned out of conjecture, nor merely because plaintiffs have a quite understandable desire to share in their mother's funds.

There are two matters here which are deficient in specificity: the first is, how much would satisfy the requirement of "a little for my [Mary's] arthritis." And the second is, if Mary were to "divide the rest," the question arises, with whom, and in what proportions. The fact that plaintiffs assume that their mother must have meant with them does not make it so. The direction is so lacking in specificity as to these plaintiffs that it could be satisfied by Mary dividing it with others, e. g., with family members, including grandchildren, or with charities, or practically anyone of her choice. Therefore, even if the statement had been in writing, signed by the mother Lucy, there is doubt that it should properly be regarded as sufficiently specific to meet the requirements for the establishment of a trust for plaintiffs' benefit.

1. *Hobbs v. Fenton*, 25 Utah 2d 206, 479 P. 2d 472 (1971); *Hanks v. Hales*, 17 Utah 2d 344, 411 P.2d 836; *Behive State Bank v. Rosquist*, 26 Utah 2d 62, 484 P.2d 1188, and authorities therein cited.

2. *Barker v. Dunham*, 9 Utah 2d 244, 342 P. 2d 867; *Northcrest, Inc. v. Walker Bank & Trust Co.*, 122 Utah 268, 248 P.2d 692.

3. Utah Const., Art. VIII, Sec. 9, provides that " . . . in equity cases the appeal *may* be on questions of both law and fact . . . "; see *Wiese v. Wiese*, 24 Utah 2d 236, 469 P.2d 504; *Nokes v. Cont. Min. & Mil. Co.*, 6 Utah 2d 177, 308 P.2d 954.

4. See *Allen v. Allen*, 109 Utah 99, 165 P.2d 872; *MacDonald v. MacDonald*, 120 Utah 573, 236 P.2d 1066.

5. *Chambers v. Emery*, 13 Utah 374, 394–395, 45 P. 192, 196 (1896).

6. Cf. *Child v. Child*, 8 Utah 2d 261, 332 P.2d 981.

7. 76 Am.Jur.2d 284; A.L.I. Restatement, Trusts, Secs. 122, 123.

■ There is another substantial frailty in the plaintiffs' case. In order to establish such a trust, it would have to appear that such was the intention of the settlor *at the time* of the creation of the joint account. That is, if the account was originally created as a true joint account with right of coownership and survivorship in Mary, as it appears to have been, that status would not be changed even if the mother Lucy had at some subsequent time orally made the hereinabove quoted declaration to Mary. There being no showing in the evidence as to just when mother Lucy is supposed to have made the statement, the fair implication in the statement itself is that it would be referring to accounts which had already been established. In this regard the plaintiffs' proof is also deficient.

Defendant has also assigned error in the sustaining of an objection to testimony proffered through her husband, Lynn Walker. While our views on this point would not alone be persuasive as to the resolution of this case, they are in harmony with the conclusion we have reached. The testimony in question was to the effect that he had been present when the mother Lucy gave Mary three of the bank books and heard her say in substance: "The boys are just waiting for me to die. They want to get their hands on some of this money. But I want you to pay my personal bills and after that the balance of the money is yours."

■ Objection was made that the witness was disqualified because of Section 78–24–2(3), U.C.A.1953, commonly referred to as the "dead man's statute." It is quite understandable that the trial judge, being suddenly confronted with this objection, expressed some doubt about whether the defendant's husband should be disqualified from so testifying; and refused to admit the evidence before the jury, but subject to a later proffer. Without burdening this opinion with the details, it can be said in summary that in the repartee which occurred then and afterward, defendant's counsel may have thought he was bound by the ruling; and that in any event he had no opportunity to present it before the jury. This statute is one of exclusion and consequently should be strictly construed.[8] Except for the same familial interest a husband or any other member of a family may have in the welfare of a fellow family member, the husband had no proprietary interest in these bank accounts or the claim to them;[9] and thus was not a person having a direct interest in this claim.[10] The sustaining of the objection was error.

■ The effectiveness of the plaintiffs' attack upon the contractual obligations of these bank accounts must be judged upon the entire situation shown by the evidence, including an evaluation of the weight and purport thereof, and its legal effect upon the contract. When the several frailities in the plaintiffs' case as discussed herein are considered in that light, it is our opinion that there is no sufficient basis to support a conclusion that the contract should be avoided and a trust imposed on these accounts in favor of the plaintiffs. Accordingly, it is necessary that the judgment be reversed and the case be remanded for entry of judgment for the defendant. Costs to defendant (appellant).

HENRIOD, C. J., and ELLETT and MAUGHAN, JJ., concur.

TUCKETT, J., dissents.

---

8. *Maxfield v. Sainsbury*, 110 Utah 280, 172 P.2d 122 (1946); *Morrison v. Walker Bank & Trust Co.*, 11 Utah 2d 416, 360 P.2d 1015; *Cook v. Gardner*, 14 Utah 2d 193, 381 P.2d 78 (1963).

9. That a wife owns her property separately, see Sec. 30–2–1, U.C.A.1953.

10. *Sine v. Harper*, 118 Utah 415, 222 P.2d 571 (1950).