Calvin W. CLAYTON, Sr., Trustee, et al.,
Plaintiffs and Respondents,

v.

Calvin A. BEHLE, Executor of the Estate
of C. Comstock Clayton, Calvin A. Behle,
T. Bowring Woodbury and Ralph D.
Cowan, Trustees of the Clayton Founda-
tion, et al., Defendants-Appellants,

v.

Geraldine V. GRIFFITH, Cross-Plaintiff
and Appellant,

v.

Calvin W. CLAYTON, Sr., Trustee et al.,
Cross-Defendants and Respondents.

No. 14662.

Supreme Court of Utah.

June 16, 1977.

James B. Lee and Joseph W. Anderson of
Parsons, Behle & Latimer, Salt Lake City,
for Calvin A. Behle.

Alonzo W. Watson, Clark P. Giles and
James S. Jardine of Ray, Quinney & Nebek-
er, Salt Lake City, for Clayton Foundation.

David A. Goodwill, Roger F. Cutler, Salt
Lake City, for Geraldine Griffith.

Rex J. Hanson and James L. Sadler of
Hanson, Wadsworth & Russon, James W.
Beless, Salt Lake City, for Calvin Clayton.

ELLETT, Chief Justice:

This is a suit by the beneficiaries of the
Clayton Family Trust, an inter vivos trust,
for the recovery of the corpus of that trust.

At the time the trust was created, the
settlor was having marital problems with
his second wife. Whether due to that fact
or not, the trust that was executed October
23, 1963, contained no power of revocation.
The principal assets of the trust were 125
shares of stock in the Clayton-Macfarlane
Company, which Company owned a ranch
containing 7,461 acres of land located in
East Canyon, Utah.

A divorce was granted to the settlor from the second wife in December following the execution of the trust, and thereafter the settlor treated the original trust as though the assets belonged to him; and some four years later, he attempted to transfer those assets to various other trusts in tandem.

The beneficiaries of the various trusts are here litigating their respective claims to the shares of stock in the Clayton-Macfarlane Company. If the first trust is irrevocable, there is no basis for the claims made by the beneficiaries of the later trusts.

The record in this case is voluminous and the value of the res is great; however, the issue which confronts us is simple: Was the original trust irrevocable? The trial court was of the opinion that it was, although it permitted a great deal of time to be spent in the trial of the other issues between beneficiaries claiming under other trusts. The court undoubtedly wished to make our task on appeal easier in case we did not agree with its holding.

The rule of law is stated in Scott's Abridgement of the Law of Trusts, 1960 edition at page 607 as follows:

Where a trust is created inter vivos, the question often arises whether the settlor can revoke the trust. Where by the terms of the trust he has reserved a power of revocation, he can revoke the trust in the manner in which and to the extent to which he has reserved such a power. On the other hand, if he has not reserved a power of revocation, he cannot revoke the trust, . . . ..

The author of the text then goes on to explain that if the power of revocation was omitted by mistake, something not claimed in the matter now before us, a different situation might arise.

▮ A trust may be terminated where its continuance is not necessary to carry out a material purpose of the trust where all the beneficiaries thereof consent, and where none of them are under any incapacity;[1] and where the settlor is the sole benefi-

ciary, by the weight of authority he can terminate the trust at any time and compel the trustee to reconvey the property to him. This is true even though the purposes of the trust have not been fully accomplished.[2]

▮ In the case before us the trust instrument placed the res in trust for the settlor for his life, then to his son for his life, and upon the death of the son, to the issue of the son per stirpes. It thus appears that the ultimate beneficiaries could not be determined prior to the death of the son and for a period of gestation thereafter. Therefore, there could be no termination of the trust by agreement of the beneficiaries during the lifetime of the son.

At the time of the creation of the trust, the son of the settlor had three living sons, and the settlor had a granddaughter by his deceased daughter. The settlor died February 14, 1971, and at that time he was survived by all the above mentioned heirs, to wit: the son and the four grandchildren.

▮ The evidence showed that the Clayton Family Trust was prepared, pursuant to the direction of the settlor, by his personal friend and attorney in Boston, Massachusetts. Prior to the preparation and execution of the Clayton Family Trust, the attorney had several conferences with the settlor wherein the purposes and contents of the trust were discussed and explained thoroughly to him. During a discussion just prior to the execution of the Clayton Family Trust, the settlor expressed his concern about the preservation and security of the corpus of the Clayton-Macfarlane Company and inquired of his attorney, "Are you sure that no one can touch this real estate or the stock of this company that owns the real estate?" He was then informed that the Clayton Family Trust had the legal effect of being irrevocable. In addition, the settlor informed his attorney that the purpose for the trust was to protect the assets from all claims by third parties and to reserve and retain the ranch in the male family line.

1. Scott, A., Abridgment of the Law of Trusts (1960 ed.), Section 338, p. 625.

2. Id., Section 339, p. 627.

There is no question but that the trial court had ample, competent evidence before it to justify the holding that the settlor was not mistaken about the law of trusts and did not inadvertently fail to include a power of revocation in the trust instrument.

We agree with the trial court in holding that the Clayton Family Trust was an irrevocable trust and that the 125 shares of stock in the Clayton-Macfarlane Company be transferred to the trustee of that trust. Other assignments of error have been considered, but in view of our holding herein, we deem them to be without merit.

The judgment is affirmed with costs to the respondents.

CROCKETT, MAUGHAN and HALL, JJ., concur.

WILKINS, J., disqualified himself and Retired Justice HENRIOD sat but did not participate in this opinion.