**Donald Theodore SUNDQUIST, Plaintiff and Appellant,**

v.

**Mary Alice SUNDQUIST, Defendant and Respondent.**

No. 17057.

Supreme Court of Utah.

Dec. 23, 1981.

David M. Swope, Salt Lake City, for plaintiff and appellant.

John Lowe, Salt Lake City, for defendant and respondent.

OAKS, Justice:

The issues in this appeal are (1) whether an express trust was created, (2) if so, whether the trial court correctly decreed termination of the trust on the ground that its purposes had been fulfilled, and (3) whether attorney's fees incurred by the trustee can be paid from the trust corpus.

## I. CREATION OF TRUST

The principles governing the creation of a trust are well settled. An inter vivos trust is created when a settlor, with intent to create a trust, transfers property to a trustee in trust for, or declares that he or she (the settlor) holds specific property in trust for, a named beneficiary. *Restatement of Trusts 2d*, §§ 2, 17. The settlor need not sign a formal trust instrument or employ any particular form of words. *Capps v. Capps*, 110 Utah 468, 175 P.2d 470 (1946); *Acott v. Tomlinson*, 9 Utah 2d 71, 337 P.2d 720 (1959); Bogert, *Trusts & Trustees*, § 45 (2d ed. 1965); *Restatement of Trusts 2d*, § 24. But the settlor must have

an intent to create a presently enforceable trust, *Pagano v. Walker*, Utah, 539 P.2d 452, 455 (1975), the trust property must be clearly specified and set aside, *Renshaw v. Tracy Loan & Trust Co.*, 87 Utah 359, 363, 35 P.2d 298 (1934), and the essential terms of the trust must be clear enough for the court to enforce the equitable duties that are the *sine qua non* of a trust relationship. *Restatement of Trusts 2d*, §§ 2, 4; *Pagano v. Walker*, 539 P.2d at 454; *Duchesne County v. State Tax Commission*, 104 Utah 365, 371, 140 P.2d 335, 338 (1943).

This requirement of clarity is met if the beneficiaries are identified and the nature of their beneficial interests and the duties of the trustee are specified orally, *Capps v. Capps*, 110 Utah at 474–75, 175 P.2d 470, or in writing (as is more common), or are clearly ascertainable from the circumstances, *Restatement of Trusts 2d*, §§ 112, 129, or dictated by the law of trusts. *Loco Credit Union v. Reed*, 85 N.M. 729, 516 P.2d 1112 (1973). To be enforceable against objections, a trust in real property must be created by a writing signed by the settlor or his agent. U.C.A., 1953, § 25–5–1. But trusts other than those involving real property can be created without the formality of a writing, *Restatement of Trusts 2d*, § 39, so long as they are proven by clear and convincing evidence. *Capps v. Capps*, 110 Utah at 474–75, 175 P.2d 470.

The district court found as a fact that "the parties attempted to set up a trust [pursuant to the requirement in their divorce decree] but none was created." The findings state: "There is no document in evidence creating a trust," the terms of any trust were too "ambiguous," "the time and duration of any trust which might have been created is uncertain and . . . a reasonable time for duration of the trust has elapsed," and "[t]he parties have not defined the terms and conditions of any trust and the court has no basis upon which to find what the terms of any trust might be which the parties intended to create." These findings, which are a mixture of findings of fact and a conclusion of law on the

ultimate question of the creation of the trust, are challenged by appellant. We must therefore review the evidence to see if it clearly preponderates against the findings of the trial court. *Jensen v. Brown*, 639 P.2d 138 (1981); *Crimmins v. Simonds*, 636 P.2d 478 (1981). The evidence is essentially uncontested.

Appellant and respondent were husband and wife. In his complaint for divorce, appellant suggested a property settlement, including the creation of a trust of specified property "for the education of the children of the parties." Respondent's answer agreed to this proposal, which was then embodied in a Property Settlement Agreement and Stipulation signed by the parties on October 16, 1973. That document contains the following paragraph, which is essentially identical to the proposals the parties had specified in their pleadings:

> That both Plaintiff and Defendant agree that income derived from the interest held by the parties in the real estate syndicate known as the Big Bear Property in San Bernardino County, California, should be established as a family trust known as the Sundquist Family Trust Fund with the Plaintiff and Defendant as Trustees with the restriction and requirement that said funds be accumulated for the education of the minor children of the parties and at such time as the children have received or terminated their advanced education, any sums remaining in said trust funds should be equally divided between the Plaintiff and Defendant and during the administration of the trust if additional monies are necessary for the education of the children, the parties should be ordered to equally contribute to the trust fund.

A week later, the district court entered a decree of divorce, which included and expressly approved the foregoing provision and the other terms of the property settlement and ordered the parties to fulfill their agreements under it.

The parties proceeded as ordered. By January 24, 1975, $1,164.59 had been depos-

ited in a savings account in the Continental Bank and Trust Company of Salt Lake City in the name of the "Sundquist Family Trust." This bank account, for which an IRS number had been assigned, apparently required the signatures of both parties. No formal written trust agreement was in evidence, and presumably none was signed, but on January 25, 1975, the parties signed a one-page document titled "Addendum to Trust Agreement," which recited that "The grantors . . . do hereby modify and clarify the trust agreement on the SUNDQUIST FAMILY TRUST." The modifications pertained to the definition of "education" and the type of expenses that would be paid by the trust. During the remainder of 1975, the trust account showed deposits of interest income and a $1,154.62 income installment from the Big Bear Property, and withdrawals of $495 for the educational expenses of one of the parties' children. Similar deposits and withdrawals were shown for the years 1976 through 1979.

In 1976, because of conflict between the parties over which educational expenses were to be paid from the trust, appellant petitioned the district court having jurisdiction of the original divorce proceeding for an order that respondent sign blank withdrawal slips for appellant's use, or, in the alternative, that respondent be removed as a co-trustee. This controversy was settled on May 21, 1976, by a stipulated order which (1) directed respondent to remove herself as a joint signatory of the bank account, (2) established further definitions concerning the type and amount and documentation of educational expenses that would be paid by the trust, and (3) directed appellant to give respondent quarterly reports on disbursements made by the trust. This order refers repeatedly to "the trust," "this trust," or "the .Sundquist Family Trust Fund." Despite this clarification, conflict over the amount or type of disbursements appellant made for the children's education continued.

On October 11, 1979, respondent filed in the original divorce proceeding under the heading of "order to show cause" a request for the termination of the trust and the distribution of its proceeds in equal shares to the parties. In support, she recited the ages and current occupations of the three children of the marriage and alleged that "there is no need for a continuation of the children's education." Appellant objected, and a hearing was held on February 8, 1980, at which respondent suggested for the first time, and the district court held, that the trust had not been created in the first place.

As to the $5,914.28 balance of the trust account on deposit in the bank on February 8, 1980, the district court's conclusion that no trust was created was erroneous in law and contrary to the clear preponderance of the evidence. Here two parties signed an enforceable agreement to create a trust for the education of their children, of which they were to be trustees and to which they were to deposit the income derived from specified property. The agreement designated the purpose and beneficiaries of the trust: to provide education for the parties' children with a remainder interest in the parties themselves. On the sufficiency of these terms, the facts in this case are practically identical to those in *Loco Credit Union v. Reed*, 85 N.M. 729, 516 P.2d 1112 (1973), which sustained the validity of an educational trust created in a bank account by a property settlement agreement for the benefit of the children of the divorcing settlors. We agree with the New Mexico Supreme Court's declaration on this subject, *id.* 516 P.2d at 1116:

> The rights and duties of the trustee not detailed in the trust instrument are sufficiently detailed in the law of trusts. . . .
> The use to be made of the trust property is clearly stated in the written instrument evidencing the creation of the trust. Minute details, as to the precise items for which funds in an educational trust must be used, are not necessary for the trust's validity.

To the same effect is *Sherwin v. Smith*, 282 Mass. 306, 185 N.E. 17 (1933), which held that a devise of sums to family members "to be used only for educational purposes" created a valid trust even though the

will gave no additional guidance on how the educational trust was to be administered.

■ When the parties signed their Property Settlement Agreement in 1973, they fulfilled all the requirements for the creation of a trust (summarized earlier) except the existence of the trust property. Even the property requirement would have been fulfilled if the parties had transferred or declared a trust of the interest they owned in the Big Bear Property. But the agreement evidences no intent to do this. Instead, the parties agreed "that income derived from the interest held by the parties in the . . . Big Bear Property . . . should be established as a family trust . . . ." By this reference to "income derived" and this use of "should" in the sense of duty, the parties made clear that they were not creating a present trust but only imposing an obligation to create a trust thereafter, and that the subject matter of the trust was not to be the property then owned but the income installments to be received in the future. The installments of income were future property in 1973 and thus could not have been the subject matter of a present creation of trust. *Brainard v. Commissioner*, 91 F.2d 880 (7th Cir. 1937); Bogert, *Trusts & Trustees*, § 113 (2d ed. 1965), and authorities cited therein. Viewing the matter just after the October, 1973, agreement, the parties had an enforceable agreement to create a trust, but no trust had been created. Consequently, as to the Big Bear Property and as to future income installments, we agree with the district court's conclusion that no trust was created.

■ However, as the parties received each installment of income from the Big Bear Property, the trust automatically came into existence as to that installment. This is a consequence of the fact that the parties had made an enforceable agreement to create a trust in those installments of income, and the fact that equity would therefore treat the trust as having been perfected when the income was received. As Bogert explains: "When the subject-matter came into existence and into the hands of the intended settlor, it would at once be deemed to be held in trust, without any act of appropriation by the intending settlor, . . . ." Bogert, *Trusts & Trustees*, § 113 (2d ed. 1965), and authorities cited therein. The parties' deposit of these income installments in the properly labeled trust account in the bank is further confirmation of their performance of their agreement to create a trust and of the existence and validity of the trust as to those deposits.

If our conclusion about the creation of this trust admitted of any doubt, it would surely be resolved by the parties' signature on a formal "Addendum to Trust Agreement," by their performance of the trust by deposits and disbursements for educational purposes over a period of five years, and by the fact that the existence of the trust was, in effect, confirmed by periodic orders of the court that had approved the original agreement and supervised the performance of what the court's orders repeatedly referred to as "the trust" or "the Sundquist Family Trust."

■ For the reasons set out above, a valid trust was created and exists as to the $5,914.28 balance of the bank account, but not as to the parties' interest in the Big Bear Property or in the future installments therefrom. Under Utah Code Annotated, 1953, § 30–3–5, the district court in a divorce proceeding has "continuing jurisdiction to make such subsequent changes or new orders with respect to . . . the distribution of the property as shall be reasonable and necessary." That power does not authorize the court to alter property rights already vested in other parties, such as in the children who are the beneficiaries of the trust in the income already received and deposited in the trust account. Cf. *Hills v. Hills*, Utah, 638 P.2d 516 (1981). But section 30–3–5 does authorize the divorce court to reallocate property rights between the parties to the divorce, such as by modifying the earlier decree as to the parties' interest in the Big Bear Property, including installment pay-

ments not yet received.[1] This matter can be pursued on remand.

## II. TERMINATION OF TRUST

In *Clayton v. Behle*, Utah, 565 P.2d 1132 (1977), this Court approved and applied the general rule that even though its prescribed duration has not passed, the beneficiaries can require a court of equity to decree the termination of a trust where: (1) all beneficiaries consent, (2) no beneficiary is under an incapacity, and (3) the continuance of the trust is not necessary to carry out a material purpose of the trust. This rule is supported by a multitude of authorities, including, in addition to those cited in *Clayton v. Behle, supra; Ambrose v. First National Bank of Nevada*, 87 Nev. 114, 482 P.2d 828 (1971); Bogert, *Trusts & Trustees*, § 1007 (2d ed. 1962); 4 *Scott on Trusts* § 337 (3d ed. 1967), and authorities cited therein.[2]

In its findings of fact, the district court stated that "one of the children of the parties desires that any trust should be terminated and the other two have no objection to such termination." There were no findings of fact on whether the continuance of the trust was necessary to carry out a material purpose of the trust, except as implied by the district court's conclusions of law: "the purpose of any possible trust has been accomplished; the children, beneficiaries, have no objection to its termination and the trust should be terminated."

 At the conclusion of evidence in support of respondent's request for termination, appellant moved to dismiss. That motion should have been granted because respondent's request for termination failed of proof in two essential respects.

(1) Respondent failed to prove consent by all of the beneficiaries. Appellant, who owned a beneficial interest in remainder, resisted the termination. Moreover, although one of the parties' children consented that the trust be terminated, the other two beneficiary-children did not affirmatively consent to the termination. As Bogert states, "[I]t is well settled that the court will not end the trust as a whole on the request of a part only of the beneficiaries." Bogert, *Trusts & Trustees*, § 1007 (2d ed. 1962). It is not sufficient for purposes of this rule that beneficiaries "have no objection to its termination" or take no position on the matter. All beneficiaries must consent. *Clayton v. Behle, supra; A.B. v. Wilmington Trust Co.*, 41 Del.Ch. 191, 191 A.2d 98 (1963); *Hills v. Travelers Bank & Trust Co.*, 125 Conn. 640, 7 A.2d 652 (1939); *Closset v. Burtchaell*, 112 Or. 585, 230 P. 554 (1924).

(2) Respondent also failed to prove that there was no unfulfilled purpose of the trust which could be carried out by its continuance. Indeed, the contrary is clear from the evidence. The purpose of the trust created by the parties was to provide education for their children, with the remaining trust property to be divided equally between the parties "at such time as the children have received or terminated their advanced education . . . ." At the time of the attempted termination, the three children beneficiaries were ages 19½, 22½, and 24½. All had attended some college, but none had yet graduated from college, and none had yet attained the age when a majority of young people who aspire to "advanced" or college educations have satisfied those aspirations. Two of the three beneficiaries gave evidence expressing strong aspirations for further higher education; one was then enrolled part time in a university, and the other was in the army, but expressed his desire to continue his college

1. The record contains testimony that nine or ten future annual payments were then expected, in the total amount of approximately $18,000 to $20,000.

2. A corollary rule, also referred to in *Clayton v. Behle*, supra, that all beneficiaries can terminate a trust even though its continuance is necessary to carry out a material purpose of the trust when the settlor(s) consent to its termination, *Fowler v. Lanpher*, 193 Wash. 308, 75 P.2d 132 (1938); Bogert, *Trusts & Trustees*, § 1005 (2d ed. 1962); 4 *Scott on Trusts*, § 338 (3d ed. 1967), is inapplicable to this case because appellant, one of the settlors, resisted termination.

education part time on active duty and later as a civilian. In view of these facts, we cannot see how it can be said that the educational purposes of this trust have been fulfilled or that the appropriate and reasonable duration for performance of this trust for "advanced education" has passed. Consequently, the trust could not be terminated. *Clayton v. Behle, supra; Lafferty v. Sheets,* 175 Kan. 741, 267 P.2d 962 (1954); *Closset v. Burtchaell, supra.*

For each of these two reasons, we hold that this trust could not be terminated on the evidence before the district court in this proceeding.

### III. ATTORNEY'S FEES

At the hearing, appellant sought an order directing the payment of his attorney's fees from the corpus of the trust. Appellant's attorney represented that he had expended 15 hours in preparing to resist the proposed termination, plus his time in the hearing in the district court. These fees were denied, and appellant challenges this on appeal.

 A trustee has the fiduciary duty and the concomitant power to defend the trust from the depletion of its assets by decrees of termination or invalidity. U.C.A., 1953, § 75–7–402(1) and (3)(x) and (y); *In re Hart's Estate,* 51 Cal.2d 819, 337 P.2d 73 (1959); *Van Gorden v. Lunt,* 234 Iowa 832, 13 N.W.2d 341 (1944). A trustee who has done so successfully is entitled to have the corpus of the trust pay the reasonable attorney's fees incurred in that defense. U.C.A., 1953, § 22–3–14(3)(a), § 75–7–402(3)(t); *In re Hart's Estate, supra; Van Gorden v. Lunt, supra; Nelson v. Mercantile Trust Co.,* Mo., 335 S.W.2d 167, 175 (1960). As we said in *Walker v. Walker,* 17 Utah 2d 53, 60, 404 P.2d 253 (1965), "a trustee is entitled to reimbursement for all expenses properly incurred in discharging the responsibilities of his trust." On remand, the court should therefore review the fees for legal services rendered to the trust in this matter and order the payment of reasonable fees from the trust corpus.

Insofar as it holds that no trust was created in the parties' interest in the Big Bear Property, including their interest in installments not paid as of February 8, 1980, the decree of the district court is affirmed. In all other respects, the decree of the district court is reversed, and the case is remanded for further proceedings consistent with this opinion. No costs awarded.

HALL, C. J., and STEWART, J., concur.

HOWE, Justice (concurring and dissenting):

I concur that a trust was created as payments were received and that the court can modify the divorce decree to provide that no more payments should come into the trust.

I dissent from the balance of the holding of the majority opinion. I believe it to be error to require that the trust continue as to the funds on hand just because all the beneficiaries did not consent to its termination, or because its purpose was not fulfilled. Under § 30–3–5, U.C.A.1953, the district court has broad powers to change the funding of education for minor children from one source to another, or to discontinue funding completely. (Incidentally, both parents here offered to personally pay any expenses if their children desired further education). The formal rules of trust law should not be applied to perpetuate the trust in view of the power of the court under § 30–3–5 to terminate it.

I also dissent from the statement in the majority opinion that the balance on hand, $5,914.28, has "vested" in the children. This amount belongs to the parents upon termination of the trust under the terms of their stipulation and the divorce decree entered in 1973.

TIBBS, District Judge, concurs in the opinion of HOWE, J.