Carolyn Marie **ENDRODY**, Plaintiff and Appellant,

v.

Laszlo **ENDRODY** Jr., Endrody Trust, et al., Defendants and Appellees.

No. 940753–CA.

Court of Appeals of Utah.

April 4, 1996.

the trial court obviously believed Delgado on this point.

Michael W. Park, James M. Park, The
Park Firm, P.C., St. George, for Appellant.

Deborah D. Blackburn, Cedar City, for
Appellee Laszlo Endrody Jr.

Michael A. Day, Snow, Nuffer, Engstrom,
& Drake, St. George, for Appellee Endrody
Trust and All Other Appellees.

Before BENCH, BILLINGS and
GREENWOOD, JJ.

## OPINION

GREENWOOD, Judge:

Carolyn Endrody (Ms. Endrody) appeals
the trial court's awards of marital property,
alimony, and attorney fees. The Endrody
Trust (the Trust) responds only to Ms. En-
drody's challenge regarding the determina-
tion of marital property. Laszlo Endrody Jr.
(Mr. Endrody) responds to all of the issues
raised by Ms. Endrody.[1] We affirm in part
and remand in part.

## BACKGROUND

Mr. Endrody, a former sea captain, was
employed as a Panama Canal pilot beginning
in early 1975. Ms. Endrody met Mr. Endro-
dy while she was serving in the U.S. military
in Panama, and the parties married on April
11, 1975. The parties lived in Panama until
1979, during which time two children were
born.

In 1979, the parties established residence
in Iron County, Utah where they lived on a
working ranch (the Endrody Ranch) owned
by Mr. Endrody and his parents. Ms. En-
drody lived at the Endrody Ranch with the
parties' two children, and Mr. Endrody spent
his leave time there, while continuing his
employment with the Panama Canal. The
Endrody Ranch had been purchased by Mr.
Endrody's parents in 1970 for $80,000. The
parents made a $25,000 down payment on the

---

1. Pursuant to Rule 24(h) of the Utah Rules of
Appellate Procedure, Mr. Endrody incorporates
the arguments made by the Trust in response to

Ms. Endrody's challenge to the trial court's de-
termination of marital assets.

property, and paid annual payments on the remaining balance. Prior to the marriage of the parties, Mr. Endrody entered into a rental agreement with his parents, under which he farmed the land and paid them rent. The rental payments were slightly less than the amount required to pay the annual payments for the Endrody Ranch. This arrangement continued after the parties' marriage.

In 1984, Mr. Endrody's parents, as trustors, created the Trust. Mr. Endrody was the first trustee of the Trust. Mr. Endrody transferred the one-third interest he then held in the Endrody Ranch to the Trust. His parents also conveyed their two-thirds interest in the Endrody Ranch to the Trust. The beneficiaries of the Trust included Mr. and Ms. Endrody, their children, and other members of the Endrody family. The beneficiaries' interests in the Trust were represented by shares, of which 2070 were issued. However, pursuant to the terms of the Trust, Ms. Endrody was divested of her shares upon initiation of the divorce, and her shares reverted to her two children. Therefore, at the time of trial, Ms. Endrody owned no shares in the Trust, and Mr. Endrody controlled 1101 of the total 2070 shares issued.

Mr. Endrody used his earnings to pay rent and to make substantial improvements to the Endrody Ranch. This practice continued during the course of the marriage, with Mr. Endrody investing much of his annual income in the Endrody Ranch, which in some years lost large amounts of money.

The trial court found that the Trust was a valid inter-vivos trust and denied Ms. Endrody's claims against the Trust. The trial court did, however, find that Mr. Endrody's shares in the Trust were marital property. Accordingly, the trial court "awarded full use and benefit" of one-half of Mr. Endrody's 1101 shares in the Trust to Ms. Endrody, awarding her 550 shares, with title to these shares to be held by Mr. Endrody in a constructive trust for her benefit. Furthermore, the trial court ordered that Ms. Endrody "should be offered her portion of any distribution to shareholders before any other

application of the funds, including investment."

During the marriage, Mr. Endrody's annual income increased from approximately $24,000 to $120,000. However, after the divorce proceedings commenced, Mr. Endrody retired from his job with the Panama Canal. The trial court found that he would be unable to resume his duties because of his physical condition and child care responsibilities. The trial court awarded Mr. Endrody physical custody of the two children, one of whom has significant health problems. Ms. Endrody did not earn an income during the marriage, as she was engaged in maintaining the household and raising the couple's children. The trial court awarded Ms. Endrody alimony in the amount of $300 per month, noting that Ms. Endrody "is in need of alimony and that [Mr. Endrody] has the ability to pay a reasonable sum for alimony."

## ISSUES

Ms. Endrody raises the following issues on appeal:

(1) Did the trial court err in its treatment of the assets in the Trust?

(2) Did the trial court abuse its discretion in refusing to impute income to Mr. Endrody?

(3) Did the trial court abuse its discretion in refusing to award Ms. Endrody proceeds from the sale of property sold by Mr. Endrody during the divorce proceedings?

(4) Did the trial court abuse its discretion in failing to award all of Ms. Endrody's requested attorney fees? [2]

## STANDARDS OF REVIEW

 The determination of whether a trial court's equitable powers over divorce proceedings allow it to invade a valid, inter-vivos trust, is one of law reviewed for correctness. *Bingham v. Bingham*, 872 P.2d. 1065, 1067 (Utah App.1994). Once the marital assets are determined, however, the trial court's

---

2. We find Ms. Endrody's remaining arguments without merit, and therefore decline to address them. *See State v. Carter*, 776 P.2d 886, 888

(Utah 1989) (stating appellate courts "need not analyze and address in writing each and every argument, issue, or claim raised").

property division is reviewed under an abuse of discretion standard. *Shepherd v. Shepherd,* 876 P.2d. 429, 433 (Utah App.1994). Similarly, a trial court's alimony award is reviewed for a clear and prejudicial abuse of discretion. *Bingham,* 872 P.2d at 1067. Finally, "whether the trial court's findings of fact in support of an award of attorney fees are sufficient is ... a question of law, reviewed for correctness." *Selvage v. J.J. Johnson & Assocs.,* 910 P.2d 1252, 1257 (Utah App.1996).

## ANALYSIS

### Marital Assets

The trial court found that "the Trust is a valid inter vivos trust," and that "the [real] property ... and the personal property held by the [Trust] are not marital assets and are not available for distribution." Accordingly, the trial court dismissed Ms. Endrody's claims against the Trust. On appeal, Ms. Endrody does not challenge the validity of the Trust, instead she seeks distribution of the assets placed in the Trust based upon equitable principles.

■ Ms. Endrody refers to the general equitable powers of the court in distributing marital assets in a divorce proceeding. *See, e.g., Englert v. Englert,* 576 P.2d 1274, 1276 (Utah 1978) (noting that marital property "encompasses all of the assets of every nature possessed by the parties, whenever obtained and from whatever source derived."). However, Ms. Endrody cites no authority or rationale for the proposition that inequity in the division of marital assets would allow a court to invade a valid trust created by neither spouse and to distribute the trust assets. Such bare assertions are insufficient to prevail on appeal. *See* Utah R.App.P. 24(a)(9) ("The argument shall contain the contentions and reasons of the appellant with respect to the issues presented ... with citations to the authorities, statutes, and parts of the record relied on."); *State v. Wareham,* 772 P.2d 960, 966 (Utah 1989) (declining to address issue where "brief wholly lacks legal analysis and authority to support" argument); *Selvage,* 910 P.2d at 1264 (declining to address issue

where party "cites no authority" or "any further analysis" in support of argument).

■ Furthermore, for marital assets to be distributed, the assets must be in the possession of one, or both, of the marital parties. As the Utah Supreme Court has discussed, marital assets "encompass[ ] all of the assets of every nature *possessed by the parties.*" *Englert,* 576 P.2d at 1276 (emphasis added). While possession usually connotes physical possession, we believe it also connotes legal possession. Because Mr. Endrody does not possess the assets—that is, they are in the rightful legal possession of the Trust—they are not available for distribution as marital assets. A similar situation was addressed in *Sundquist v. Sundquist,* 639 P.2d 181 (Utah 1981), where the validity of an educational trust established for the children of divorcing parents was challenged. The *Sundquist* court held that the trial court's continuing jurisdiction over the property distribution in a divorce proceeding "does not authorize the court to alter property rights already vested in other parties, such as in the children who are the beneficiaries of the trust in the income already received and deposited in the trust account." *Id.* at 186; *cf. Horn v. First Sec. Bank,* 548 P.2d 1265, 1266–67 (Utah 1976) (holding trust executed before marriage was not fraud upon marital rights of surviving spouse and upholding exclusion of trust assets from decedent husband's estate). Thus, case law indicates that the equitable powers of the trial court in divorce proceedings do not permit the court to distribute assets held in a trust created by non-parties to the divorce or in a manner which is inimicable to the terms of the trust agreement.

Ms. Endrody also refers to cases where one spouse has been awarded an interest in the other's business. *See Dunn v. Dunn,* 802 P.2d 1314, 1318 (Utah App.1990) (reversing trial court's refusal to award wife percentage of husband's professional corporation); *Lee v. Lee,* 744 P.2d 1378, 1381 (Utah App.1987) (reversing trial court's refusal to award wife percentage of husband's stock in family business). Although both cases support the conclusion that a spouse may be entitled to a share of a business interest

developed during the marriage, neither can be said to stand for the proposition that a trust may be invaded as part of the division of marital assets. Neither case involved a trust or property owned by a third party, and Ms. Endrody offers no analysis as to why *Lee* and *Dunn* are analogous to her situation. Furthermore, *Lee* and *Dunn* are not inconsistent with the trial court's award of one-half of Mr. Endrody's shares in the Trust to Ms. Endrody through the vehicle of a constructive trust. Ms. Endrody was, in fact, awarded an equitable share of her husband's interest in the Trust by the only means consistent with the provisions of the trust agreement. Accordingly, the trial court did not abuse its discretion in its division of marital property and its refusal to distribute trust assets as marital property.

### Alimony [3]

 The trial court awarded Ms. Endrody alimony of $300 per month, noting that the "award is based upon the Court's finding that [Ms. Endrody] is in need of alimony and that [Mr. Endrody] has the ability to pay a reasonable sum." Ms. Endrody appeals this award, arguing that the trial court abused its discretion by refusing to impute income to Mr. Endrody. Specifically, Ms. Endrody asserts that alimony should be based upon Mr. Endrody's historical earnings of $120,000 per year, which was also the amount he was earning at the time she filed the divorce complaint. Ms. Endrody further asserts that Mr. Endrody "admitted that he discontinued all activities which would grant him income because of the divorce."

Ms. Endrody does not, however, identify any evidence in the record which supports this assertion. Furthermore, Ms. Endrody fails to marshal any of the evidence in support of the trial court's findings, and does not demonstrate "that, despite such evidence, the findings are so lacking in support as to be against the clear weight of the evidence and, therefore, clearly erroneous." *Crouse v. Crouse*, 817 P.2d 836, 838 (Utah App.1991). Although Ms. Endrody does cite to the record, the references concern only her own economic need and not Mr. Endrody's al-

leged voluntary underemployment. Such citations are not sufficient to defeat the trial court's findings. *See Schaumberg v. Schaumberg*, 875 P.2d 598, 603 (Utah App. 1994) (presuming trial court's findings correct where husband "merely reargued the evidence supporting his position.").

Furthermore, there was substantial credible evidence, unrefuted by Ms. Endrody on appeal, upon which the trial court based its findings. The trial court heard testimony that Mr. Endrody suffers from failing health which would preclude him from returning to employment as a pilot for the Panama Canal Commission. Specifically, Mr. Endrody has passed the age of retirement, has had a heart attack, and suffers from failing eyesight and back problems. Finally, Mr. Endrody has assumed responsibility for the care of the couple's two children, one of whom is seriously ill and requires constant attention, further hampering his ability to return to his previous occupation, which demands long absences from home. Accordingly, the trial court did not abuse its discretion by refusing to impute income to Mr. Endrody.

### Proceeds from the Sale of Property

Ms. Endrody argues that the trial court should have required Mr. Endrody to account for proceeds from the sale of certain property which took place while the divorce was pending, specifically, the proceeds from sales of cattle and a home. However, a review of the record reveals that the trial court addressed both issues.

As to the sale of the cattle, the trial court noted during a hearing on November 29, 1993:

> With regard to the cattle, the cattle are no more and have been disposed of. And by prior orders, this court has ordered Mr. Endrody to pay $20,000 of the value of the cattle to Ms. Endrody as temporary support. The remaining $10,000, Mr. Endrody is entitled to keep.

Because the trial court has addressed this issue, Ms. Endrody cannot prevail on the argument that the trial court did not account for the proceeds from the sale of the cattle in

---

**3.** On the remaining issues, the dispute is solely between Ms. Endrody and Mr. Endrody.

reaching its decisions regarding the distribution of marital property.

Regarding the sale of the house, we initially note that Ms. Endrody's brief does not specify which house she refers to, claiming only that Mr. Endrody sold "one of the homes acquired by the parties." However, Ms. Endrody goes on to identify this home as the one "placed in the Endrody Trust and sold by the Trustee," leading this court to believe she is referring to the home on Blue Sky Drive in Enoch City which was, in fact, sold by the Trust.

As with the sale of the cattle, Ms. Endrody ignores the trial court's findings on this issue. The trial court found that "the Trust bought a home on Blue Sky Drive in Enoch City *which was paid for with Trust funds*" and which was sold by the trust to reduce debt. Accordingly, Ms. Endrody's assertion that the trial court did not account for this sale is incorrect. Furthermore, because Ms. Endrody does not challenge the trial court's determination that the home in question was the property of the Trust, and we have previously determined that she has no claims to the assets of the Trust, Ms. Endrody is not entitled to proceeds from the sale of this home.

## Attorney Fees

■ The trial court found that Ms. Endrody "had incurred attorney[ ] fees in the amount of $35,602.25, with costs in the total amount of $1,432.50." Mr. Endrody did not present any evidence contesting the reasonableness of Ms. Endrody's attorney fees. However, the trial court ordered, without making supporting findings, that Mr. Endrody should pay Ms. Endrody only $15,000 of her attorney fees. The trial court offered no explanation for its reduction in the amount of attorney fees.

Ms. Endrody challenges the unexplained reduction in attorney fees, arguing that the trial court cannot sua sponte reduce an uncontroverted request for fees, unless the findings contain an explanation for the reduction. It is well established that the decision to award attorney fees, and the amount of such fees, is within the trial court's discretion. *Rappleye v. Rappleye*, 855 P.2d 260, 265 (Utah App.1993). However, this court has stated:

> "[T]he court abuses its discretion in awarding less than the amount [of attorney fees] requested *unless* the reduction is warranted" by one or more of the above factors. The trial court must, accordingly, identify such factors on the record and also explain its sua sponte reduction in order to permit meaningful review on appeal.

*Id.* at 266 (citations omitted). Because the trial court did not enter findings nor offer any explanation for its sua sponte reduction in attorney fees, we must conclude that the reduction in attorney fees was an abuse of discretion.[4] Accordingly, we remand this issue to the trial court to enter appropriate findings and make any necessary adjustment in the amount of attorney fees awarded to Ms. Endrody.

## CONCLUSION

Ms. Endrody is not entitled to a distribution of the assets held by the Trust because she offers no legal theory by which such assets could be distributed, and the equitable powers of the trial court in a divorce proceeding do not allow the distribution of as-

4. Mr. Endrody argues that we must presume the trial court's ruling on this issue was correct because Ms. Endrody failed to provide a copy of the complete record on appeal. *See, e.g., State v. Rawlings*, 829 P.2d 150, 152–53 (Utah App.1992) (denying petition for habeas corpus because "[i]n the absence of an adequate record on appeal, we cannot address the issues raised and presume the correctness of the disposition made by the trial court."); *State v. $9,199.00 U.S. Currency*, 791 P.2d 213, 217 (Utah App.1990) (declining to address issue where counsel failed to provide court with complete record on appeal, presuming trial court's findings to be correct). However, in *Sampson v. Richins*, 770 P.2d 998 (Utah App.), *cert. denied*, 776 P.2d 916 (Utah 1989), this court noted that although there was a presumption in favor of the correctness of the trial court's findings when the record was not available, the court could review "whether the trial court's findings of fact support its conclusions of law and judgment." *Id.* at 1002. Similarly, because Ms. Endrody's appeal is based upon the inadequacy of the trial court's *findings of fact* in support of its sua sponte reduction in fees, this court may review the adequacy of the trial court's *findings of fact* regarding the sua sponte reduction in fees without reviewing the complete record.

sets that are not in the legal possession of the divorcing parties. The trial court did not abuse its discretion in failing to impute income to Mr. Endrody because his age, failing health, and child care responsibilities support the conclusion that his reduced income is not the result of voluntary underemployment. The trial court did not abuse its discretion in its rulings regarding sales of both the cattle and the home owned by the Trust. However, although the trial court has discretion in awarding attorney fees, its failure to enter detailed findings of fact in support of its sua sponte reduction of the requested fees was an abuse of discretion, and we remand on this issue. Both parties are to bear their own costs and attorney fees on appeal.

BENCH and BILLINGS, JJ., concur.